**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI  DIVISION**

ISRAEL   ROSELL   and   ROBERTO
GONZALEZ,  for  themselves  and  on
behalf of those similarly situated,

                Plaintiffs,

vs.

VMSB, LLC, d/b/a GIANNI'S and d/b/a
CASA CASUARINA, a Florida Limited
Liability Company

                Defendant.

_____/

CASE NO.:   1:20-cv-20857-KMW

**<u>PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND</u>**
**<u>INCORPORATED MEMORANDUM OF LAW</u>**

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs, Israel Rosell and Roberto Gonzalez ("Plaintiffs"), on behalf of themselves and those similarly situated, file their Motion for Class Certification and state:

## PRELIMINARY STATEMENT

This Court should certify the Plaintiffs' Florida Constitution and Florida Minimum Wage Act, Fla. Stat. §448.110 ("FMWA") claim (Count II) as a class pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3). The Plaintiffs' proposed class definition is:

> **All "Bartenders and Servers" who worked for Defendant at Gianni's (The Villa Casa Casuarina at the Former Versace Mansion location), 1116 Ocean Dr., Miami Beach, FL 33139, at any time from February 26 2015, to the present, who (1) were not provided notice of the employer's intention to take a tip credit to satisfy minimum wage obligations; and/or (2) were required to participate in a mandatory tip pool in which tips were shared with "Captains" and with the restaurant itself.**

The Plaintiffs' proposed class meets all of the requirements for class certification: members of the proposed class are identifiable and numerous; there are common questions of law and fact; the proposed class representatives have claims that are typical of the class, and will fairly and adequately represent class interests. Plaintiffs seek class certification under Rule 23(b)(3) because common legal and factual issues predominate over any individual issues, and a class action is superior to other available methods for a fair and efficient adjudication case.

Further, Plaintiffs request that the Court compel Defendant to produce a complete and accurate employee list of all "Servers" and "Bartenders" within the defined class who worked for Defendant during the five (5) years preceding this action until the date this Court decides this motion; Plaintiffs should be permitted to circulate a class action notice to all putative class members.

Finally, Plaintiffs seeks leave to appoint Israel Rosell and Roberto Gonzalez as Class Representatives, and Plaintiffs' counsel as class counsel pursuant to Rule 23(g). The proposed Class Representatives and class counsel are respectively qualified, and will fairly and adequately

represent the interests of members of the class.

WHEREFORE, Plaintiffs respectfully request that the Court certify a class of all Servers and Bartenders who meet the class definition.

## STATEMENT OF FACTS

Defendant owns and operates "Gianni's," a restaurant on Ocean Drive in Miami Beach, Florida.  Defendant has employed over 100 servers and bartenders in the **three** years preceding the date collective notice issued in this action alone.1  In addition, Daniel Tamir, Defendant's director of finance, and corporate representative designated to testify regarding the factual bases underlying Defendant's asserted affirmative defenses, testified that there are approximately 150 members within Plaintiffs' proposed class definition. *See* Relevant Excerpts of Deposition of Daniel Tamir, Corporate Representative ("Tamir Dep."), attached as **Exhibit A**, at 178:21-179:5.

Mr. Tamir, who was also Defendant's designated corporate representative regarding Defendant's contention that the class members are not similarly situated, acknowledged that the servers and bartenders share the same job duties, and were all subject to the same pay policies. *Id.* at 35:2-36:2.  Likewise, Salem Mounayyer, another designated corporate representative, and the person whose job is to "run the company," testified that there are no differences between servers and bartenders as to their job duties or the manner in which they are paid.  *See* Relevant Excerpts of Deposition of Salem Mounayyer, Corporate Representative ("Mounayyer Dep."), attached as **Exhibit B**, at 20:2-4, 74:8-23. These pay practices include payment of a direct hourly wage of $5.65 per hour, and payment of an amount in each paycheck that Defendant contends constitutes a "commission," comprised of so-called "service charges" charged by the restaurant. *See* Tamir Dep. at 89:3-7, 91:18-92:8; Mounayyer Dep. at 117:15-118:5.  Moreover, Defendant acknowledges that it uniformly subjected all class members to the pay policy whereby Defendant retained 2% of the amounts Defendant referred to as "service charges" for the restaurant itself,

and that Defendant distributed portions of these purported "service charges" to employees Defendant refers to as "Captains." *See* Tamir Dep. at 61:25-62:23.

Plaintiffs allege that: (1) Defendant failed to give the servers and bartenders proper notice regarding its intention to take the tip credit; (2) amounts which Defendant referred to as "service charges" are tips and not true service charges because, *inter alia* those charges could be removed or reduced; and (3) the participation of Defendant and Defendant's Captains--management employees—rendered Defendant's tip pool illegal and Defendant ineligible to take the tip credit. *See, e.g.* Declaration of Israel Rosell, D.E. 17-3, at ¶¶ 3-7; Declaration of Roberto Gonzalez, D.E. 17-4, at ¶¶ 3-8. Defendant admits that it failed to provide notice of the tip credit. *See* Tamir Dep. at 91:9-17, 92:9-16. As such, the pay policies common to the class necessarily include those alleged to be unlawful – specifically, (1) the payment of sub-minimum wages without providing legally-mandated notice to do so, and while operating an unlawful tip pool; and (2) unlawfully diverting monies from a mandatory tip pool to managers ineligible to participate in a tip pool, and to the restaurant itself. Because all class members were uniformly subject to these policies, they all suffered and continue to suffer from the same class-wide wage and hour violations alleged herein. Notably, Defendant does not dispute the existence of policies at issue or their scope, but only whether those policies are unlawful (i.e. the ultimate merits of Plaintiffs' claims). *See* Tamir Dep. at 91:6-94:4. The legality of these policies is an issue of law common to the class, a determination as to which will be resolved on evidence equally applicable to all class members and which resolution will apply equally to the claims of all class members.

Notwithstanding the hours worked by Plaintiffs and the other Servers and Bartenders, Defendant failed to pay them full and proper minimum wages for their work. *See* Amended Complaint, D.E. 68, at ¶¶ 47-90; Declaration of Israel Rosell, D.E. 17-3, at ¶¶ 3-7; Declaration of

---

1 When the Court ordered Defendant to produce a list of all servers and bartenders who worked for Defendant in the three years preceding the date the Court granted collective certification in

3

Roberto Gonzalez, D.E. 17-4, at ¶¶ 3-8.   Instead, Defendant illegally failed to pay its Servers and Bartenders at least the applicable Florida Minimum Wage for all weeks/hours worked.   *Id.* Plaintiffs' claims are typical of the claims of other former and current Servers and Bartenders employed by Defendant, and typical of the claims of all members of the representative class identified.

As stated above, the representative class consists of all Servers and Bartenders who were paid sub-minimum wages, in one or more workweeks, as a result of Defendant's uniform unlawful pay practices whereby Servers and Bartenders were not provided notice of the tip credit, and were required to participate in an unlawful tip pool from which monies were distributed to management and to the business itself.  *See* Declaration of Israel Rosell, D.E. 17-3, at ¶¶ 3-7; Declaration of Roberto Gonzalez, D.E. 17-4, at ¶¶ 3-8.   Plaintiffs' declarations, the allegations of the Amended Complaint, and the testimony of Defendant's corporate representatives provide evidence of a sufficient factual basis to certify a class of all of Defendant's Servers and Bartenders who were subject to the same alleged illegality; Defendant's failure to pay them their proper minimum wages pursuant to the FMWA.  *See, generally,* D.E. 68; Declaration of Israel Rosell, D.E. 17-3, at ¶¶ 3-7; Declaration of Roberto Gonzalez, D.E. 17-4, at ¶¶ 3-8; Tamir Dep. at 54:23-56:4, 61:25-62:23, and 158:13-159:6  (admitting that restaurant retains 2% of collected service charges, that Captains receive distributions from collected service charges, and that service charges were removed by Captains as a way of handling customer complaints).

Simply put, all other Servers and Bartenders within the defined class are owed full and proper payment of their minimum wages and the right to participate in this litigation.   It is undisputed that Defendant has acted, or refused to act, on grounds applicable to all Servers and Bartenders in the defined class, thereby making the identical relief appropriate with respect to their current and former Servers and Bartenders within the defined class as a whole.   Moreover,

this matter, Defendant produced a list of over 100 responsive names.

the common questions of law and fact predominate over any questions affecting only the named-Plaintiffs, and a class action is superior to other available methods for the fair and equitable adjudication of the controversies between the representatives described above and the Defendant. And, although the defined class of current and former Servers and Bartenders is identifiable and certain, the individual members of the class cannot be completely identified and notified of their rights regarding this action absent access to Defendant's books and records regarding same.

Defendant's above compensation policy and practice (failure to pay full and proper minimum wages for all hours worked, and operation of an unlawful tip pool) is common to all Servers and Bartenders in the defined class.  Moreover, these common policies and procedures violate the FMWA's minimum wage provisions requiring the payment of the Florida minimum wage for each workweek.  Therefore, Plaintiffs request that this Court certify a class comprised of Defendant's Servers and Bartenders in the defined class, who were subjected to the illegal pay practices described above at any time within the five (5) years immediately preceding the filing of the Amended Complaint, up to and including the present.

Plaintiffs further request that they be permitted to give such notice as approved by this Court to all such class members of their rights regarding this litigation.  The declarations of Plaintiffs, as well as the testimony of Defendant, clearly establishes that Defendant's other Servers and Bartenders in the defined class had similar duties, were paid in the same manner, and were uniformly subjected to Defendant's illegal pay practices described above.  Thus, class certification is appropriate.

## MEMORANDUM OF LAW

### I.      THE COURT SHOULD CERTIFY THE  FMWA CLAIMS AS CLASS ACTION CLAIMS PURSUANT TO RULE 23.

#### A.      Plaintiffs' Substantive Claims Under the FLSA and Florida Constitution.

The FLSA provides for mandatory minimum wage as well as overtime pay at time and one-half an employee's regular rate for all hours worked in excess of forty (40) per week, subject

to certain exemptions. *See* 29 U.S.C. §§ 206, 207 and 213. A private right of action to collect unpaid minimum wages is authorized by 29 U.S.C. § 216 (b)*,* which also provides for a "collective" action procedure, as opposed to the class action procedure set forth in Federal Rule of Civil Procedure 23. Under a collective action procedure, "similarly situated" employees are entitled to join in the named Plaintiff's wage claims by "opting-in" to the action, or signing and filing a consent to joinder with the court. *See* 29 U.S.C. § 216 (b). The Court has already certified this action as a collective action, and twenty-five individuals have opted-in to this case. D.E. 42.

Both Florida law and the FLSA also provide for liquidated damages of double the amount of any unpaid wages, and reasonable attorney's fees. *See* 29 U.S.C. § 216 (b). The statute of limitations under the FLSA is two years from accrual of the claim, but three years for willful violations. *See* 29 U.S.C. § 255(a). Although the opt-in procedure is mandatory for FLSA wage claims, no motion for class "certification" of the collective claims is necessary. *See Noble v. 93 University Place Corp.,* 224 F.R.D. 330, 334, n. 4 (S.D.N.Y. 2004); *Ansoumana v. Gristede's Operating Corp.* 201 F.R.D. 81, 84, n. 1 (S.D.N.Y. 2001).

The FLSA works in conjunction with state wage laws, and specifically authorizes the promulgation of higher minimum wages by state or municipal laws, and allows for the application of such state and municipal laws, to the extent that they do not contradict the FLSA. *See* 29 U.S.C. §218(a); *see also* 29 C.F.R. § 778.5.[2]

Article X, Section 24 of the Florida Constitution also provides for mandatory minimum wages. The Florida Constitution establishes a minimum wage for employees and authorizes the Florida legislature to promulgate enacting legislation regarding such minimum wages (Florida Statute 448.110) which are binding upon employers independent of any employment agreements.

---

2 29 C.F.R. § 778.5 reads in pertinent part, "Where a higher minimum wage than that set in the Fair Labor Standards Act is applicable to an employee by virtue of such other legislation, the regular rate of the employee, as the term is used in the Fair Labor Standards Act, cannot be lower

As relevant here, the Florida Constitution authorizes a private right of action for unpaid minimum wages and set a five-year (5) statute of limitations on such actions. Both the Constitution and the statute also provide for liquidated damages in an amount equal to the unpaid minimum wages, and reasonable attorneys' fees and costs. Fla. Const. Art. X, §24. In addition, the Florida Constitution specifically incorporates the eligibility requirements set forth in the FLSA as to any employer claiming that employee "tips" make up any portion of the employee's wages. *Id.*

The binding precedent of this Circuit dictates that claims for unpaid minimum wages pursuant to the Florida minimum wage laws are analogous to minimum wage claims under the FLSA, and thus, "hybrid" class action suits under Rule 23 (for state law minimum wages) and 29 U.S.C. § 216(b) (for minimum wages and/or overtime wages) may proceed without conflict. *Calderone v. Scott*, 838 F.3d 1101, 1107 (11th Cir. 2016) (Holding that, as a matter of first impression, "[a] § 216(b) collective action and a state-law Rule 23(b)(3) class action may be maintained in the same proceeding[,]" and reversing lower court ruling to the contrary); *See generally* Advisory Committee's Notes to Federal Rule 23(b)(3) ("The present provisions of 29 U.S.C. § 216(b) are not intended to be affected by Rule 23, as amended."); *see also, e.g., Prickett v. DeKalb County,* 349 F.3d 1294, 1297 (11th Cir. 2003) (distinguishing opt-in procedure under FLSA and Rule 23); *Bennett v. Hayes Robertson Group, Inc.*, 880 F.Supp.2d 1270, 1276-1277 (S.D. Fla. 2012) (recognizing "hybrid class actions").

**B.**      <u>**Applicable Standard**</u>.

Federal Rule of Civil Procedure 23 provides the standard for certification of class actions in federal court. Rule 23 (a) sets forth the following prerequisites to class certification:

One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative

---

than such applicable minimum, for the words 'regular rate at which he is employed' as used in section 7 must be construed to mean the regular rate at which he is lawfully employed."

parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

On the other hand, Rule 23(b) provides for three different categories of class action and sets forth the requirements for maintaining a class action. As relevant to this case, a class action is authorized under Rule 23(b)(3) when:

> The court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

As many courts have recognized, on a motion to certify a class, a court must accept all allegations in the pleadings as true, and should not determine or resolve the merits or claims of the case unrelated to the requirements of Rule 23. *In Re Carbon Dioxide Antitrust Litigation,* 149 F.R.D. 229, 232 (M.D. Fla. 1993) ("[f]or the purposes of class certification...the Court accepts the plaintiffs' substantive allegations as true."); *Bush v. Calloway Consolidated Group River City, Inc.*, 2012 WL 1016871, at *3 (M.D. Fla. March 26, 2012) (citations omitted); *see also Heffner v. Blue Cross & Blue Shield of Ala., Inc.,* 443 F.3d 1330, 1337 (11th Cir. 2006)("a district court may not resolve the merits of a case when ruling on a Rule 23 motion"); *Eisen v. Carlisle and Jacquelin,* 417 U.S. 156, 177-78, (1974) (When considering a motion for class certification, the Court accepts the allegations in the complaint as true and does not conduct "a preliminary inquiry into the merits" of the case, and "[i]n determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met.").

Indeed, as this Court has noted, "[w]hile the Court's certification analysis 'may entail some overlap with the merits of the plaintiff's underlying claim, Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage.'" *Palm Beach Golf Ctr.-*

*Boca, Inc. v. Sarris*, 311 F.R.D. 688, 693 (S.D. Fla. 2015) (WILLIAMS, J.) (citing *Amgen Inc. v. Conn. Ret. Plans & Trust Funds,* 568 U.S. 455, 466 (2013)) (internal quotations and citations omitted). Plaintiffs bear the burden of establishing each of the requirements for class certification. *See Valley Drug Co. v. Geneva Pharm., Inc.,* 350 F.3d 1181, 1188 (11th Cir. 2003) (citing *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 615–18 (1997)). Trial courts are given substantial discretion in determining whether to grant class certification, such latitude reflecting that the district court is often in the best position to assess the propriety of the class and has the ability, pursuant to Rule 23(c)(4)(B), to alter or modify the class, create subclasses, and decertify the class whenever warranted. *See Babineau v. Federal Exp. Corp.,* 576 F.3d 1183, 1189 (11th Cir. 2009); *Perez v. Metabolife Intern., Inc.*, 218 F.R.D. 262, 274 (S.D. Fla. 2003) ("a district court has substantial discretion in deciding whether to certify a class action.")(citations omitted). As courts routinely have recognized, "if there is to be an error made, let it be in favor and not against the maintenance of the class action." *Fernandez-Roque v. Smith*, 539 F.Supp. 925, 946 (N.D. Ga. 1982) (citing, 7 Wright and Miller, Federal Practice and Procedure, s 1753, page 541 (1972)); *see In Re Carbon Dioxide Antitrust Litigation,* 149 F.R.D. at 232 (in deciding whether certification is appropriate, "[t]he Court resolves any doubt in favor of class certification.")

In addition, "where a collective action under the FLSA that is based on the same set of facts has been approved, there is an inclination to grant class certification of state labor law claims." *Lee v. ABC Carpet & Home,* 236 F.R.D. 193, 202-03 (S.D.N.Y. 2006).

Here, Plaintiffs are seeking certification of their Florida Constitution claims under Rule 23 (b)(3). As such, they will demonstrate that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members," and that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). Further, the Court must define the class and class claims, issues, and defenses at the time of certification of the class pursuant to Rule 23(c), and must appoint a class counsel pursuant to Rule 23 (g).

Plaintiffs bear the burden of establishing each requirement for class certification under Fed. R. Civ. P. 23. Failure to prove any Rule 23(a)'s factors precludes class certification. *See Valley Drug,* 350 F.3d at 1188. More specifically, each of the conditions of Rule 23(a) must be satisfied, and Plaintiffs must demonstrate that their action fits within one of the three categories of Rule 23(b). *See id.* However, assuming the truth of the factual assertions contained in the complaint, *Shelter Realty Com. v. Allied Maint. Corn.,* 574 F.2d 656, 661 n.15 (2d Cir. 1978), "[r]ule 23 is [to be] given liberal rather than restrictive construction, and courts are to adopt a standard of flexibility," *Marisol A. v. Giuliani,* 126 F.3d 372, 377 (2d Cir. 1997).

At bar, Plaintiffs seek certification of a class comprised of all of Defendant's Servers and Bartenders in the five year period stated, who Plaintiffs allege were wrongly denied minimum wages in contravention of the Florida Constitution.  The crux of Plaintiff's allegations is that *all* of Defendant's Servers and Bartenders suffered from Defendant's illegal pay practices as complained of herein.  In accordance with the Florida Constitution, the named Plaintiffs and the putative class members, have common claims for unpaid minimum wages, because Defendant did not give any of them required notice regarding the tipped minimum wage, and also operated an unlawful tip pool that made it ineligible to pay less than the full minimum wage.  *See generally,* Amended Complaint; *see also* Rosell Dec., D.E. 17-3, at ¶¶ 3-7, Gonzalez Dec., D.E. 17-4, at ¶¶3-8.

**C.**    **Florida State Law and Constitutional Claims Are Well Suited for Rule 23 Treatment.**

This is not an issue of first impression.   Rather federal courts throughout Florida routinely grant class certification of wage and hour claims under Florida state law.  *See, e.g., Lopez v. Hayes Robertson Grp., Inc.*, No. I3-10004-CIV, 2013 WL 10561294, at *1 (S.D. Fla. Sept. 23, 2013), *amended*, No. I3-10004-CIV, 2013 WL 10568568 (S.D. Fla. Sept. 25, 2013) (certifying both R. 23 opt-out class and FLSA opt-in collective for a class of servers and bartenders where plaintiffs alleged, as here, that the defendants "1) did not give the notice

required by statute, (2) collected Plaintiffs' tips, thus creating a tip pool, but improperly shared some of those tips with non-tipped employees, and (3) retained some of the tips for themselves"); *Garcia-Celestino v. Ruiz Harvesting, Inc.*, 280 F.R.D. 640 (M.D. Fla. 2012)(certifying Florida state wage and hour claims); *Rosario-Guerrro v. Orange Blossom Harvesting*, 265 F.R.D. 619 (M.D. Fla. 2010 (same); *Napoles-Arcila v. Pero Family Farms, LLC*, 2009 WL 1585970 (S.D. Fla. June 4, 2009)(same); *Mesa v. Ag-Mart Produce, Inc.*, 2008 WL 2790224 (M.D. Fla. July 18, 2008)(same). Indeed, some courts have granted class certification even in cases where certification of an opt-in collective action was denied. *See, Kubiak v. S.W. Cowboy, Inc.*, 2014 W.L. 2625181 (M.D. Fla. 2014)(certifying R. 23 class FMWA claims while simultaneously denying opt-in FLSA collective action).

### D.  Plaintiffs Satisfy All Of Rule 23's Prerequisites.

The Court should certify the proposed class because it meets the requirements of Rule 23(a)(1-4) (numerosity, commonality, typicality, and adequacy of representation), and at least one prong of Rule 23(b): Rule 23(b)(3). *Grimes v. Rave Motion Pictures Birmingham,* 264 F.R.D. 659, 662–64 (N.D. Ala. 2010). The Court should also appoint Plaintiff's counsel as Class Counsel under Rule 23(g).

### 1. Ascertainability.

Although it does not appear in the language of Rule 23, there is an implied requirement of ascertainability for class certification. *Jankowski v. Castaldi,* 2006 WL 118973, at *5 (E.D.N.Y. Jan. 13, 2006)(citing *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.,* 209 F.R.D. 323, 337 (S.D.N.Y. 2002)). This Court has held that "[a]n identifiable class exists if its members can be ascertained by reference to objective criteria. The analysis of the objective criteria also should be administratively feasible. Administrative feasibility means that identifying class members is a manageable process that does not require much, if any, individual inquiry."*Sarris*, 311 F.R.D. 688, 693 (S.D. Fla. 2015) (quoting *Bussey v. Macon Cnty. Greyhound Park, Inc.,* 562 Fed.Appx. 782, 787–88 (11th Cir.2014)).  Here, as was apparent in the process to disseminate

notice to the certified collective, the class members are readily identifiable by job title, from Defendant's personnel documents and payroll records.

Plaintiff's proposed class definition, which covers a putative class of approximately one hundred (150) of Defendant's employees, and is identifiable from Defendant's records, satisfies this requirement. *See* Tamir Dep. at 178:21-179:5. Consequently, these putative class members are ascertainable.

### 2. Numerosity.

The first requirement under Rule 23(a) is that the putative class be "so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1). "Generally, a class should have no fewer than 21 members and will satisfy the numerosity requirement if it has more than 40." *Vega v. T–Mobile USA, Inc.,* 564 F.3d 1256, 1266 (11th Cir. 2009); *Cox v. American Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986)(generally, over 40 class members is adequate to satisfy the numerosity requirement); *Martinez v. Mecca Farms, Inc.,* 213 F.R.D. 601, 605 (S.D. Fla. 2002).

Here, notice has already issued to over 100 individuals who meet the class definition within a fraction of the period covered by the FMWA claims. Defendant admits that the putative class covers about 150 people. Tamir Dep. at 178:21-179:5. Plaintiffs have met this requirement.

### 3. Commonality.

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2). Courts should "liberally construe [ ] the commonality requirement." *Trief v. Dun & Bradstreet Corp.,* 144 F.R.D. 193, 198-99 (S.D.N.Y. 1992) (citations omitted), and find it satisfied if Plaintiffs point to at least one common issue. *Marisol A.,* 126 F.3d at 376 (*"a common question* of law or of fact") (emphasis added). Commonality, "does not require that all of the questions of law or fact raised by the case be common to all plaintiffs," but a class action "must involve issues that are susceptible to class-wide proof." *Id.; Cooper v. S. Co.,* 390 F.3d

695, 719 (11th Cir.2004), *overruled in part of other grounds by Ash v. Tyson Foods, Inc.,* 564 U.S. 454, 457–58 (2006). "The commonality element is generally satisfied when a plaintiff alleges that '[d]efendants have engaged in a standardized course of conduct that affects all class members.' " *In re Checking Account Overdraft Litigation*, 275 F.R.D. 666, 673 (S.D. Fla. 2011) (citing *In re Terazosin Hydrochloride,* 220 F.R.D. 672, 687 (S.D.Fla.2004); *Agan v. Katzman & Korr, P.A.,* 222 F.R.D. 692, 697 (S.D. Fla. 2004); *In re AmeriFirst Sec. Litig.,* 139 F.R.D. 423, 428 (S.D. Fla. 1991).   Here, the Defendant's policy whereby it pays less than the full minimum wage to its Servers and Bartenders without proper notice, and operates a tip pool from which monies are diverted to management and to the business itself, provides the type of "unifying thread" Rule 23(a)(2) requires.[3]   *In re Vivendi Universal S.A.,* 242 F.R.D. 76, 84 (S.D.N.Y.2007) (citing *Cutler v. Perales,* 128 F.R.D. 39, 44 (S.D.N.Y.1989)).

---

[3] In order to claim a tip credit, tipped employees must be allowed to retain all their tips. 29 U.S.C. § 203(m*); Goldin v. Boce Group, L.C.*, 773 F. Supp. 2d 1376, n. 1 (S.D. Fla. 2011); *Ash v. Sambodromo, LLC*, 676 F. Supp. 2d 1360, 1369 (S.D. Fla. 2009); *Pellon v. Bus. Representation Intern., Inc.*, 528 F. Supp. 2d 1306, 1310 (S.D. Fla. 2007) *aff'd*, 291 Fed. Appx. 310 (11th Cir. 2008). The tip credit is invalidated when the restaurant owners participate in the tip pool. *Chung v. New Silver Palace Rest., Inc.*, 246 F. Supp. 2d 220, 230 (S.D.N.Y. 2002) ("Every court that has considered the issue has unequivocally held that the FLSA expressly prohibits employers from participating in employee tip pools."). In addition, the tip credit is invalidated when employers fail to inform tipped employees that they intend to take a tip credit in accordance with Section 203(m). The informational requirement is a condition precedent to tip credit availability. *Id*; *Goldin; Sambodromo, Pellon, supra*. The information required to be included in the notice is outlined in the DOL's interpretative bulletin:

> Pursuant to section 3(m), an employer **is not eligible** to take the tip credit unless it has informed its tipped employees **in advance** of the employer's use of the tip credit of the provisions of section 3(m) of the Act, i.e.: The amount of the cash wage that is to be paid to the tipped employee by the employer; the additional amount by which the wages of the tipped employee are increased on account of the tip credit claimed by the employer, which… may not exceed the value of the tips actually received…; that all tips received by the tipped employee must be retained by the employee except for a valid tip pooling arrangement **limited to employees who customarily and regularly receive tips** and that the tip credit shall not apply to any employee who has not been informed of these requirements in this section.

Many common questions are present here including, but not limited to:

(1) Whether Defendant paid its Servers and Bartenders an hourly rate of less than the full minimum wage;

(2) whether the monies Defendant's collected as "gratuities" or "Service Charges" meet the legal definition of service charges, or whether they are tips that should have been retained by the employees;

(3) If the amounts were tips, whether the Captains job duties rendered them management employees who could not legally retain any portion of the tips collected;

(4) Whether Defendant violated the law when it retained 2% of the amounts it collected as purported "Service Charges;"

(5) Whether Defendant provided notice of its intention to take the tip credit sufficient to satisfy its obligations under the FMWA;

(6) Whether Defendant willfully violated the FMWA; and

(7) Whether Defendant's violation of the FMWA was in good faith;

### 4. **Typicality.**

The third element, typicality, focuses on whether the class representative possesses the same interest and suffers the same injury as the class member. "Typicality measures whether a sufficient nexus exists between the claims of the named representatives and those of the class at large." *Wooden* v. *Bd. of Regents of Univ. Sys. of Ga.*, 247 F.3d 1262,1287 (11th Cir. 2001). The claim of a class representative is typical if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory. *See J. W.* v. *Birmingham Board of Educ.*, 2012 WL 3849032, at *9 (N.D. Ala. Aug. 31,

---

29 C.F.R. § 531.59(b) (emphasis added).

The official comment to § 531.59(b), specifies that strict compliance is required:

2012). The typicality requirement may be satisfied despite substantial factual differences, however, when there is a 'strong similarity of legal theories.'" *See Murray* v. *Auslander,* 244 F.3d 807, 811 (11th Cir. 2001) (quoting *Appleyard* v. *Wallace,* 754 F.2d 955,958 (11th Cir. l985)).

Here, Plaintiffs' claims arise from the same course of conduct as the claims of the class – Defendant's policy whereby it pays its Servers and Bartenders less than the statutory minimum wage for all hours worked by paying the tipped minimum wage without providing proper notice of the intention to do so, and while operating an unlawful tip pool through which monies that should have been retained by Servers and Bartenders were diverted the managers and the business itself. Thus, Plaintiffs have demonstrated typicality.

### 5. Adequate Representation.

The fourth requirement, adequacy, encompasses both the adequacy of class counsel,[4] and the adequacy of the named Plaintiffs to prosecute the action. *Griffin* v. *Carlin,* 755 F.2d 1516, 1533 (11th Cir. 1985). Class representatives are required to "fairly and adequately protect the interests of the class," Fed. R. Civ. P. 23(a)(4), and must, therefore, "possess the same interest and suffer the same injury as the class members." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625-26 (1997). The adequacy requirement seeks to ensure that the interests of class members are not "antagonistic to one another." *In re Drexel Burnham Lambert Group, Inc.,* 960 F.2d 285, 290-91 (2d Cir. 1992) (internal citations and quotation marks omitted). In determining adequacy of representation, courts also consider whether the proposed "representative is familiar with the action, whether he has abdicated control of the litigation to class counsel, and whether he is of sufficient moral character to represent a class." *Noble v. 93 University Place Corp*., 224 F.R.D. 330, 339 (S.D.N.Y. 2004)(internal citations omitted). Here, because the named Plaintiffs are familiar with the action, have actively participated in all stages of the case, including in providing discovery and sitting for depositions, have a good relationship with undersigned

---

The Department has concluded that notice of the specific provisions of 3(m) is required to adequately inform the employee of the requirements of the tip credit.

counsel, and have the same interests as the rest of the proposed class, they are adequate class representatives.

### 6. Common Questions of Law and Fact Predominate and Class Action Certification is the Superior Method of Litigating This Action.

Rule 23(b)(3) requires that common questions of law or fact not only be present, but "predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). This inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc.,* 521 U.S. at 623. That Plaintiffs easily meet the Rule 23(a) criteria is a strong indicator that Rule 23(b)(3) is satisfied. *See General Telephone Company of the Southwest v. Falcon,* 457 U.S. 147, 157 n.13 (1982)) (satisfaction of Rule 23(a) "goes a long way toward satisfying the Rule 23(b)(3) requirement of commonality").

#### a. Common Questions of Law and Fact Predominate.

To satisfy the predominance requirement, a named plaintiff must establish that the issues subject to generalized proof in the class action, and thus applicable to the class as a whole, predominate over those issues that are subject only to individualized proof. *See Jackson v. Motel 6 Multipurpose, Inc.,* 130 F.3d 999, 1005 (11th Cir. 1997). Thus, predominance requires not just the presence of common issues, but also that those common issues actually outweigh any individualized issues in the litigation. "Considering whether 'questions of law or fact common to class members predominate' begins, of course, with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.,* 131 S.Ct. 2179, 2184, (2011).

Here, all members of the class are unified by common facts - that all Servers and Bartenders have the same material duties, and that Defendant improperly pays them by paying them subminimum wages. They are also unified by a common legal theory - that Defendant's

---

[4] The adequacy of proposed class counsel is addressed in detail in Section 7, *infra.*

failure to provide at least the statutory minimum wage for all hours worked violates the FMWA. Thus, Plaintiffs have carried their burden regarding the predominance requirement.[5]

### b. A Class Action is the Superior Method of Adjudication

The second part of the 23(b)(3) analysis is a relative comparison examining whether "the class action device [is] superior to other methods *available* for a fair and efficient adjudication of the controversy." *Green v. Wolf Corp.,* 406 F.2d 291, 301 (2d Cir. 1968) (emphasis added). Rule 23(b)(3) sets forth a non-exclusive list of factors pertinent to judicial inquiry into the superiority of a class action, including: whether individual class members wish to bring, or have already brought, individual actions; the desirability of concentrating the litigation of the claims in the particular forum; and the difficulties of managing the case as a class action. Fed. R. Civ. P. 23(b)(3). Denying class certification on manageability grounds is "disfavored" by the courts and "should be the exception rather than the rule." *In re Visa Check/MasterMoney Antitrust Litig.,* 280 F.3d 124, 140 (2d Cir.2001)(internal quotations omitted).  "When determining if a class action is superior, 'we are not assessing whether this class action will create significant management problems, but instead determining whether it will create relatively more management problems than any of the alternatives,'" such as separate lawsuits by class members.  *Hinson v. Bellsouth Telecommunications, Inc.,* 275 F.R.D. 638, 648 (M.D. Fla. 2011)(citation omitted).  Here, each of these factors favors certification.

Plaintiffs are unaware of any individual who is interested in "controlling the prosecution ... of separate actions" or of any other pending minimum wage or wage and hour lawsuits against Defendant by putative class members.  Moreover, the value of each individual claim, while not insignificant, would quickly be swallowed up by the costs of litigation. *See Torres v. Gristede's*

---

[5] The calculation of damages will be specific to each class member based on the hours they worked, and is largely a matter of mathematical calculation.  Tamir Dep. at 62:3-16, 123:13-124:9.  In this Circuit, "the presence of individualized damages issues does not prevent a finding that the common issues in the case predominate…" *Allapattah Servs., Inc. v. Exxon Corp.,* 333 F.3d 1248, 1261 (11th Cir. 2003).

*Operating Corp.*, 2006 WL 2819730, at *16 (S.D.N.Y. Sept. 29, 2006) ("[b]ecause litigation costs would likely exceed any gains from [the] wage recovery, class members would be unlikely to litigate individually.").

It is also likely that current employees are likely to refrain from filing individual claims due to fear of retaliation. *Torres,* 2006 WL 2819730, at *18 ("since some class members are still employees of Defendants', class members may fear reprisal and would not be inclined to pursue individual claims.").  An employee fearful of retaliation or of being "blackballed" in his or her industry may choose not to assert his or her FLSA rights. *Damassia v. Duane Reade, Inc.,* 250 F.R.D. 152, 163 (S.D.N.Y.2008) ("Indeed, it may be that in the wage claim context, the opt-out nature of a class action is a valuable feature lacking in an FLSA collective action, insofar as many employees will be reluctant to participate in the action due to fears of retaliation." (internal citations omitted)); *Scott v. Aetna Services,* 210 F.R.D. 261, 267 (D.Conn.2002) (noting "the evidence that potential class members failed to join the FLSA class action because they feared reprisal"). *See generally Sanft v. Winnebago Indus., Inc.,* 214 F.R.D. 514, 524 (N.D.Iowa 2003) (compiling cases holding Rule 23's numerosity requirement satisfied because, where some class members are still employed by the defendant, "concern regarding employer retaliation or reprisal renders individual joinder less practicable").

A class action is far superior to litigating over one hundred individual claims without a class-wide liability inquiry.  Numerous individual actions would waste judicial resources and create the danger of conflicting outcomes.  Where, as here, there are questions of law and fact common to all employees of the class, it is more efficient to litigate the claims in one forum. *See Borcea v. Carnival Corp.*, 238 F.R.D. 664, 676 (S.D. Fla. 2006)(in wage and hour case class action superior to many individual claims), citing *Bolanos,* 212 F.R.D. at 158 ("The interests of justice will be well served by resolving the common disputes of potential class members in one forum."). It is certainly superior to the only real alternative - effectively allowing the Defendant's pay practices to continue unchecked.

If the Court grants Plaintiff's motion for class certification, the class-wide liability inquiry will focus on whether Defendant has a common illegal policy or practice that violated rights of individual class members - *i.e.,* whether Defendant impermissibly paid subminimum wages to its Servers and Bartenders.  Given Defendant's uniform compensation policy, at trial the issue will be whether Defendant's pay policy and practice was illegal. Given the nature of the issues at bar, there can be no question that Defendant's liability, in regard to the entire class, can be determined based upon common proof.

### 7. <u>Plaintiffs' Counsel Should be Appointed Class Counsel.</u>

Under Rule 23(g), a district court that certifies a class action must also appoint class counsel. Fed. R. Civ. P. 23(g)(1)(A). In appointing such counsel, the Court must determine that counsel will "fairly and adequately represent the interests of the class." FED. R. CIV. P. 23(g)(1)(B). The Court "must consider [1] the work counsel has done in identifying or investigating potential claims in the action, [2] counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action, [3] counsel's knowledge of the applicable law, and [4] the resources counsel will commit to representing the class."  Fed. R. Civ. P. 23(g)(1)(C)(i). The Court "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class; [and] may direct potential class counsel to provide information on any subject pertinent to the appointment[.]"  Fed. R. Civ. P. 23(g)(1)(C)(ii)(iii).

Plaintiffs respectfully submit that their counsel are qualified in handling class action and collective wage claims and, considering the work their counsel has performed in investigating their claims and pursuing this litigation, counsels' experience and knowledge of the applicable law, and the financial resources that counsel has already committed and will continue to commit to this litigation, counsel are qualified to represent the class, and will fairly and adequately represent the interests of the class. *See* Affidavits of Angeli Murthy ("Murthy Aff.") and Andrew R. Frisch ("Frisch Aff."), attached hereto as **EXHIBITS C** and **D**, respectively.  Plaintiffs'

counsel previously have served and/or are serving as class counsel in dozens of collective/class actions and/or putative collective and class actions throughout the country. Further, Morgan & Morgan is one of the largest trial law firms in the country, with over 700 lawyers and vast resources to litigate this case on behalf of the entire class. *See id.* Plaintiffs therefore request that their counsel be appointed class counsel upon certification of the class.

Through extensive investigation into the class and collective allegations as well as the filing of the motions for collective action and class action notice, Morgan & Morgan, Angeli Murthy and Andrew Frisch have demonstrated the extent to which they have performed substantial work investigating the Servers' and Bartenders' claims. Further, proposed class counsel are experienced in class actions and wage-and-hour litigation. (Murthy Aff. ¶¶ 3-9 & Frisch Aff. ¶¶ 3-14). For these reasons, the Court should appoint Angeli Murthy, Andrew R. Frisch and Morgan & Morgan as class counsel.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully requests an Order:

(a) pursuant to Rule 23 (a) and (b) (3) certifying a class of:

**All "Bartenders and Servers" who worked for Defendant at Gianni's (The Villa Casa Casuarina at the Former Versace Mansion location), 1116 Ocean Dr., Miami Beach, FL 33139, at any time from February 26 2015, to the present, who (1) were not provided notice of the employer's intention to take a tip credit to satisfy minimum wage obligations; and/or (2) were required to participate in a mandatory tip pool in which tips were shared with "Captains" and with the restaurant itself.**

(b) compelling Defendant to produce a complete and accurate employee list of all Servers and Bartenders who worked for Defendant during the five (5) years preceding this action up until the date this Court decides this motion;

(c) permitting Plaintiffs to circulate a class action notice to all putative class members;

(d) appointing Israel Rosell and Roberto Gonzalez as Class Representatives; and

(e) appointing Plaintiffs' counsel, Angeli Murthy and Andrew R. Frisch of Morgan & Morgan, as class counsel pursuant to Rule 23 (g).

Respectfully submitted this 1st day of April, 2020.

/s/ ANGELI MURTHY
ANGELI MURTHY, ESQ., B.C.S.
Florida Bar No. 088758
ANDREW R. FRISCH, ESQ.
Florida Bar No. 27777
MORGAN & MORGAN, P.A.
8151 Peters Rd., Suite 4000
Plantation, Florida 33324
Telephone: (954) WORKERS
Facsimile:  (954) 327-3016
E-mail: Amurthy@forthepeople.com
Email: Afrisch@forthepeople.com
*Trial Counsel for Plaintiffs and the
Proposed Class*

## CERTIFICATION PURSUANT TO L. R. CIV. P. 7.1(a) (3)

Counsel certifies that this action does not require conferral under Local Rule 7.1(a)(3), which specifically excepts from the conferral requirement motions "to permit maintenance of a class action."

/s/ ANGELI MURTHY
ANGELI MURTHY, ESQ., B.C.S.
Florida Bar No. 088758
ANDREW R. FRISCH, ESQ.
Florida Bar No. 27777
MORGAN & MORGAN, P.A.
8151 Peters Rd., Suite 4000
Plantation, Florida 33324
Telephone: (954) WORKERS
Facsimile:  (954) 327-3016
E-mail: Amurthy@forthepeople.com
Email: Afrisch@forthepeople.com

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on the 1st day of April, 2020, the foregoing document was

filed using the CM/ECF system, which will send notification to all counsel of record.

<div style="margin-left: 50%;">

/s/ ANGELI MURTHY
Angeli Murthy, Esq., B.C.S.
FL Bar No.:  088758
MORGAN & MORGAN, P.A.
8151 Peters Rd., Suite 4000
Plantation, FL 33324
Tel: 954-318-0268
Fax: 954-327-3016
E-mail: Amurthy@forthepeople.com

</div>