**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

CASE NO.: 1:20-cv-20857-KMW

ISRAEL ROSELL and ROBERTO
GONZALEZ, for themselves and on
behalf of those similarly situated,

    Plaintiffs,

vs.

VMSB, LLC d/b/a GIANNI'S and
CASA CASUARINA, a Florida
Limited Liability Company,

    Defendant.
_____/

## DEFENDANT, VMSB, LLC'S MOTION FOR SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW

Defendant, VMSB, LLC ("VMSB"), pursuant to Fed. R. Civ. P. 6(b), through undersigned counsel, and pursuant to Fed. R. Civ. P. 56 and S.D. Fla. L.R. 56.1, hereby moves for summary judgment on all claims asserted by Plaintiffs, Israel Rosell ("Rosell") and Roberto Gonzalez ("Gonzalez") (collectively, "Plaintiffs") in the Amended Complaint (D.E. 68). The material facts are undisputed, and VMSB is entitled to judgment as a matter of law. In support thereof, VMSB states as follows:[1]

---

[1] VMSB has filed and served its Statement of Material Facts to Which There is no Genuine Dispute in Support of Defendant's Motion for Summary Judgment and Incorporated Memorandum of Law ("Statement of Facts"), which is incorporated by reference herein. References to the Statement of Facts and corresponding paragraph(s) shall be identified by "SOF ¶ __."

**I.     PRELIMINARY STATEMENT**

In this action, Plaintiffs, current and former servers and bartenders at "Gianni's", an upscale restaurant located in the Former Versace Mansion in Miami Beach, violated the minimum wage requirements under the Fair Labor Standards Act ("FLSA") and the Florida Minimum Wage Act ("FMWA") for sponsoring an invalid tip-pool and for failing to pay overtime. In pursuing these claims, Plaintiffs fail to appreciate that the service charges at issue in this case are not "tips" for purposes of the FLSA and the FMWA, and may be used to satisfy the monetary requirements of the minimum wage laws. In addition, so long as the compensation they received from regular hourly wages and service charges equals or exceeds the applicable minimum wage, there is no violation of the Act. That is exactly the case here.  Two recent decisions are instructive:

As the recent decisions in *Nelson v. MLB Hotel Manager, LLC*, 2020 WL 7481410 (S.D. Fla. Dec. 18, 2020) and *Compere v. Nusret Miami, LLC*, 2020 WL 4464627, at *3 (S.D. Fla. May 31, 2020) indicate, the conflating of automatic service charges and tips in an effort to find a technical deficiency:

> is not a novel argument—plaintiffs often try to characterize a service charge as a tip on the basis that it is sometimes waived. *See, e.g., Compere v. Nusret Miami, LLC*, No. 19-CV-20277, 2020 WL 4464627, at *3 (S.D. Fla. May 31, 2020) (Singhal, J.) ("[Plaintiffs argue that] because managers could, from time to time, decide not to charge the Service Charge to a particular table of patrons, the Service Charge is a 'tip'. This is simply incorrect as a matter of law."). Just like occasionally "buying [customers] a drink or des[s]ert" to resolve their complaints does not mean that customers had discretion over whether to pay for drinks or dessert at La Sombra, occasionally waiving the service charge does not mean that it was a "tip" that customers had discretion to pay, or the amount and to whom it would be paid. "[W]hether a manager at the [restaurant] may choose not to charge it to a particular patron does not render it 'discretionary' for purposes of 29 C.F.R. § 531.32." Compere, 2020 WL 4464627 at *3.

*MLB Hotel Manager,* 2020 WL 7481410.

Here, the service charge levied on every customer check by VMSB at Gianni's was compulsory (SOF ¶ 4), imposed on customers by the VMSB (as opposed to demanded from the customer by the employee) (SOF ¶ 8), and distributed by the employer to its employees (as opposed to collected by the employees in the first instance and then remitted back to the employer) (SOF ¶¶ 18-19). Further, the service charges were collected by VMSB and recorded in its "TOAST" point-of-sale ("POS") system, thereby becoming part of VMSB's gross receipts. (SOF ¶ 22).

Regarding overtime, VMSB meets all of the requirements of the 7i exemption as a "retail or services establishment" and thus Plaintiffs are exempt from overtime premium pay. Accordingly, the record evidence establishes that none of Plaintiffs" claims have merit, and that summary judgment should be entered in favor of VMSB.

## II.  FACTUAL BACKGROUND

VMSB operates Gianni's at the Villa ("Gianni's"), an upscale, high-volume restaurant, open to and serves the general public, including local residents as well as guests visiting Miami and South Beach. In 2015, VMSB took over the operations of the restaurant from the predecessor operator. At the time, the predecessor operator compensated its service staff by providing a combination of a reduced hourly wage, a portion of service charges included in guest checks, and tips. (SOF ¶ 1). Rather than require that the servers and bartenders share tips or engage in a tip pool with fellow front-of-house employees as a "tip-out", the decision was made to continue to pay the reduced hourly wage to servers and bartenders, to apportion and distribute part of the mandatory service charge collected on every customer check as part of the employees' regular rate, and to allow the employees to keep – rather than pool – any tips they receive from guests. (SOF ¶ 2).

Through the implementation of the mandatory service charge, Gianni's charged all guests a percentage of the total sales price of food and beverage – which was set at 20% from 2015 until August 4, 2017, and then raised to 22% of the total bill. (SOF ¶ 3). The service charge was automatically included in every bill – regardless of the size of the guest party or the amount of the bill (SOF ¶ 4). Since the opening of Gianni's, the menu informs guests that "[a]ll prices exclude the 20% [or 22% service charge and 9% appliable tax." (SOF ¶ 5).

The service change could only be removed within the TOAST POS system by accessing a specific mode in the system that was only available to captains and management. Neither the servers, nor the bartenders were able to remove the service charge; that authority solely rested with management. (SOF ¶¶ 8-9, 13). Neither of the Plaintiffs ever informed a guest that the Service Charge could be removed or reduced and testified that the servers and bartenders could not remove the service charge.  Rather, when asked, Plaintiffs would inform the guest that the Service Charge was for the house, to be shared. (SOF ¶ 8).

There were very few occasions when the service charge was removed from a guest bill, all of which were for issues pertaining to service. (SOF ¶ 10) (Plaintiff Gonzalez testified that he believed the automatic charge was taken off the bill "more than once" by Captain Gabriel Scocco during his three-plus years working at Gianni's - following customer complaints regarding service, but could not elaborate on further details) (Opt-in Plaintiff Chow estimated that he believed the service charge was removed approximately three times during his nearly four years at Gianni's, all due to service complaints, but could not recall when any of the removals occurred, the specific complaints of the customers, and never witnessed the charge being removed – which was purportedly left to the captain).  In those few instances, the decision to remove the service charge was not at the discretion of the guest. (SOF ¶ 8).  If a server or bartender becomes aware of

4

complaints from a guest regarding service, the captain is tasked with intervening and, if necessary, offering a free drink or dessert, discounting the bill, or to remove or "comp" an item from the bill. (SOF ¶¶ 10, 12). In accordance with VMSB policy, the removal of a service charge was highly disfavored particularly given that company policy dictated that service charges were to be unaffected by discounts on the food and beverage portion of the bills, write-offs or "comps" of portions of meals, and even walk-outs where no payment is received from the guest or charge-offs where the entire payment would be refunded, VMSB would still honor the service charge payment and distribution. (SOF ¶¶ 14-15).

While working at Gianni's, all Plaintiffs received direct hourly wages ($5.65 per hour), a portion of the non-discretionary, automatic service charge levied on every guest, and discretionary tips, which were not shared or pooled with other employees. (SOF ¶¶ 17, 20-21).

VMSB segregates and categorizes the service charges received and distributed within its TOAST POS system. (SOF ¶ 22). In addition, VMSB records those charges and pays state sales taxes on them. (SOF ¶ 24).

The final bill– or check – presented to a customer at Gianni's contains a separate, line where the customer may include a discretionary gratuity, or tip, which is separate and apart from the Service Charge. Any tips included by the guest and added to the final check – whether credit card or cash – is not shared but is kept by the server or bartender who serviced the guest. (SOF ¶¶ 20 – 21).

One of the goals in including all of the front-of-house employees like servers, bartenders, captains, back-servers, bussers and hostesses in the service charge distribution was to incentivize those employees – who functioned as a team - to maintain a consistent level of outstanding service expected at a fine dining establishment like Gianni's. By providing all of the service employees

with a vested interest in the automatic service charge, there was an incentive for the employees to earn the service charge. (SOF ¶ 2).

## III.   THE SUMMARY JUDGMENT STANDARD

Summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (*per curiam*). If the party seeking summary judgment meets the initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the non-moving party to come forward with sufficient evidence to rebut this showing with affidavits or other relevant and admissible evidence. *Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir. 1991).

The United States Supreme Court recently held that exemptions under the FLSA deserve a "fair (rather than narrow) interpretation" because the exemptions are "as much a part of the FLSA's purpose as the overtime-pay requirement*." Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1142 (2018) (internal quotation marks and citation omitted).  Accordingly, WHD applies a "fair reading" standard to all exemptions to the FLSA, including the Section 7(i) exemption addressed in this letter.

## IV.   ARGUMENT

### A.   Plaintiffs' Minimum Wage Claims Fail Because Their Compensation Included Hourly Wages and Service Charges Well in Excess of the Applicable Minimum Wage

Under the FLSA, the regular rate includes all remuneration for employment paid to, or on behalf of, the employee.  See 29 U.S.C. § 207(e); *Allen v. Bd. of Pub. Educ. for Bibb Cty.*, 495

6

F.3d 1306, 1311 (11th Cir. 2007); *Daniels v. Sanchelima & Assocs., P.A.*, 2016 WL 4903065, at *3 (S.D. Fla. Jan. 20, 2016). The total remuneration for employment is then divided by the total number of hours actually worked by the employee in the workweek for which compensation is paid. *Allen*, 495 F.3d at 1311; *Kohlheim v. Glynn Cty., GA.*, 915 F.2d 1473,1480 (11th Cir. 1990); *see* 29 C.F.R. § 778.118.

As opposed to tips, compulsory service charges are considered commissions that must be included in the regular rate calculation. Where service charges are distributed to employees, such payments "may be used in their entirety to satisfy the monetary requirements" of the federal minimum wage law. *See Pellon v. Bus. Representation Int'l, Inc.*, 528 F. Supp. 2d 1306, 1316 (S.D. Fla. 2007) ("Relying on 29 C.F.R. § 531.52 and § 531.55(a), the Department of Labor has proclaimed that even service charges in the form of imposed gratuity do not count as tips.") (citing U. S. Department of Labor, Wage and Hour Division Opinion Letter, No. FLSA2005-31, 2005 WL 3308602 (September 2, 2005)); *Nascembeni v. Quayside Place Partners, LLP*, 2010 WL 2351467, at *2 (S.D. June 11, 2010) (expressing that "[a] service charge is a commission despite the fact that the parties may describe it colloquially as a gratuity or a tip") (internal citation omitted); *Klinedinst v. Swift Invs., Inc.,* 260 F.3d 1251, 1257 (11th Cir. 2001) ("[c]ommissions (whether based on a percentage of total sales or of sales in excess of a specified amount, or on some other formula) are payments for hours worked and must be included in the regular rate").

    **1.**    **The Distribution of Service Charges to Plaintiffs Satisfy the Monetary Requirements of the FLSA and FMWA**

At all times material, Plaintiffs and the putative class members' regular rates of pay were well above the applicable statutory minimums. The Florida minimum wage during the relevant time period (November 1, 2017 through January 18, 2019) was $8.05 for 2015 and 2016, $8.10 for 2017, $8.46 per hour for 2018 and 2019; and $8.56 per hour for 2020) and the Federal

Minimum Wage of $7.25. Plaintiffs were all paid well in excess of the minimum wage for all hours worked when considering the base wage ($5.65) plus the service charge distribution. (SOF ¶ 33), and never fell below the minimum wage. More specifically, Plaintiffs Rosell and Gonzalez, were paid between $25.03 and $32.33 (Rosell) and $28.14 and $31.62 per hour (Gonzalez), during the representative periods. *Id.*

### 2. VMSB's Automatic Service Charge is Not a Tip

"Generally speaking a service charge is a 'tip' if the customer retains discretion over its payment, and is a 'commission' if the customer is required to pay it." *Lalic v. CG RYC, LLC*, 2018 WL 5098983, at *6 (S.D. Fla. Aug. 13, 2018) (Williams/Torres) (citation omitted); *see* 29 C.F.R. § 531.52 ("Whether a tip is to be given, and its amount, are matters determined solely by the customer, who has the right to determine who shall be the recipient of the gratuity."); 29 C.F.R § 531.55 ("A compulsory charge for service, such as 15 percent of the amount of the bill, imposed on a customer by an employer's establishment is not a tip").

Further, "[t]he core features of a service charge are that it be compulsory and distributed by the employer to the employees—as opposed to being collected by the employee in the first instance, then sent back to the employer for redistribution to the employees." *Nelson v. MLB Hotel Mgr, LLC*, 2020 WL 7481410, at *5 (S.D. Fla. Dec. 18, 2020) (citing 29 C.F.R. § 531.55(a) ("[W]here negotiations between a hotel and a customer for banquet facilities include amounts for distribution to employees of the hotel, the amounts so distributed are not counted as tips received.") (emphasis added); *Tom v. Hospitality Ventures LLC*, 980 F.3d 1027, 1033 (4th Cir. Nov. 24, 2020) (citing to 29 C.F.R. § 531.52, and holding that, "a sum of money 'presented by a customer as a gift or gratuity in recognition of some service performed" is only a tip when both the decision to pay the gratuity and the amount of the gratuity are "determined solely by the customer.'").

VMSB's guests did not pay the service charges directly to the servers and bartenders like Plaintiffs, nor did guests maintain the right to determine the recipient of the service charge. Rather, guests paid the 20% or 22% service charge to VMSB, a fact Plaintiffs' concede. (SOF ¶ 8) Rosell Dep. 45:8-17 ("Q. The service charge, which may have been called 'gratuity', was that listed on the customer check that was generated from the system or the point of [sale] system that was provided to customers? A. Yes. The 22 percent was already included in the generation or when the ticket was generated. It was already included in the total and that's what was given to the client. The client – the customer rather, would take a look at that and that's what they would pay."). Opt-in Plaintiff Chow testified that guests sometimes asked "why the service charge was automatically on the bill" (Chow Dep. 119:14 – 23), to which Chow stated he would reply, "[t]hat's the house. The house does the service charge." Chow admitted that he would have told inquiring guests that the service charge payment goes to the house. Chow Dep. 120:10-23. *See* U. S. Department of Labor, Wage and Hour Division Opinion Letter, WL 971257, at *1 (Aug. 29, 1997) (defining a service charge as "mandatory" because the customer "is not aware that he may reduce or eliminate the charge. Under such circumstances, it is our position that payments to employees from the service charges collected by the employer are direct compensation under the direct control of the employer.." ***even if service charge is discretionary with customer***).

VMSB anticipates that Plaintiffs will argue that the recently-produced order spreadsheets from TOAST, which purportedly include the details on each and every order entry inputting into TOAST from Gianni's from 2016 – 2020, and include some entries where the service charge is blank, renders the service charge discretionary. In reality, the entries where the service charge is blank represent a fraction of a percent of the orders entered by VMSB. (SOF ¶ 16). For calendar year 2018, the total completed, applicable orders with a blank service charge box represent

9

approximately 0.19% of all orders – or 1.9 orders every 1,000. *Id.*; *see* Declaration of Daniel Tamir, attached as Exhibit "1" to the SOF. In *Compere v. Nusret Miami, LLC*, 2020 WL 4464627, at *3 (S.D. Fla. May 31, 2020), the Court held that "whether a manager at the [restaurant] may choose not to charge [a service charge] to a particularly patron dos not render it 'discretionary' for purposes of 29 C.F.R. § 531.32." Similarly, here, the removal of a fraction of a percent of service charges does not invalidate it as a service charge and transform the payment to a tip. *See MLB Manager*, 2020 WL 7481410, at *5.

3. **Plaintiffs' Received All of Their Tips Which Were Not Pooled**

Plaintiffs contend that VMSB is not entitled to the benefit of the tip-credit provision because (i) VMSB did not provide proper notice of its intention to take the tip credit; and (ii) the inclusion of captains and the house in the "tip pool" renders it invalid.

Moreover, Plaintiffs' reliance on the "tip credit" rules for the proposition that all gratuities must be retained by the employee is misplaced. The tip credit is an optional method of paying minimum wage. The employer may elect to pay tipped employees the minimum wage in direct wages or pursuant to the tip credit method of payment. Where, as in this case, the minimum wage is satisfied in direct wages (hourly rate plus service charges) the tip credit becomes superfluous and irrelevant.

B. **Plaintiffs' Overtime Claims Fail**

The FLSA typically requires employers to pay employees at the enhanced rate of time-and-a-half when their workweek exceeds 40 hours. *Nascembeni*, 2010 WL 2351467, at *3. As an exception to this overtime requirement, an "employee of a retail or service establishment" does not need to be paid time-and-a-half when his or her workweek exceeds 40 hours so long as (1) the employee works in a "retail or service establishment"; (2) the employee's regular rate is more than

one and one-half times the minimum hourly rate; and (3) more than half of the employee's compensation is from commissions on goods or services. *Id.*; 29 U.S.C. § 207(i); *Shehata v. Sobe Miami, LLC*, 2018 WL 2995603, at *2 (S.D. Fla. June 14, 2018). As shown below, VMSB has met its burden and the exemption applies to Plaintiffs' employment, deeming them exempt from the FLSA's overtime requirements.

### 1. Gianni's is a Service Establishment.

Pursuant to 29 C.F.R. § 779.411, a "retail or service establishment" is defined as an establishment in which 75 percent of its annual dollar volume of sales of goods or services (or of both) is not for resale and is recognized as retail sales or services in the particular industry." Given that VMSB operates a restaurant at which Plaintiffs worked, VMSB and Gianni's fits squarely within the definition of a service establishment under the FLSA. *See Diggs v. Ovation Credit Servs., Inc.*, 449 F. Supp. 3d 1280, 1288 (M.D. Fla. 2020) (recognizing restaurants as a service establishment within its meaning under the FLSA); *see* 29 C.F.R. § 779.320 ("The regulations explain that Congress intended that the term 'retail or service establishment' to denote the traditional local retail or service establishment such as…restaurants….that serve the everyday needs of the community in which they are located") (SOF ¶ 1) ("VMSB operates Gianni's"…an upscale, high-volume restaurant, open to and serves the general public, including local residents as well as guests visiting Miami and South Beach).

### 2. Plaintiffs' Regular Rate of Pay is Greater than One and One-Half Times the Minimum Hourly Rate in Workweeks Where They Worked Overtime

To determine an employee's regular rate of pay for the purpose of applying the retail or service establishment exemption, the regular rate is calculated by dividing the employee's total weekly compensation by the number of hours the employee worked during the workweek.

*Rappaport v. U.S. Commc'ns, Inc.*, 2009 WL 10667090, at *5 (S.D. Fla. August 25, 2009) ("[t]he 'regular rate of pay' is the 'hourly rate actually paid the employee for the normal, non-overtime workweek for which he is employed' and 'must reflect all payments which the parties had agreed shall be received regularly during the workweek, exclusive of overtime payments.'") (internal citation omitted); Allen, 495 F.3d at 1311. As such, combing Plaintiffs' base hourly wage (i.e. $5.65 per hour) received for each hour worked with their respective distribution of the 20 or 22% service charge they received, their hourly rates were well in excess of 1.5 times the applicable minimum wage rate. (SOF ¶¶ 32-33; Declaration of Daniel Tamir, Exh. 1 to SOC, at ¶ 29).

The Florida minimum wage during the relevant time period (November 1, 2017 through January 18, 2019) was $8.05 for 2015 and 2016, $8.10 for 2017, $8.46 per hour for 2018 and 2019; and $8.56 per hour for 2020. Plaintiffs were paid at least one-and-a half times the minimum wage rate for the Florida minimum wage ($8.05 for 2015 and 2016, $8.10 for 2017, $8.46 per hour for 2018 and 2019; and $8.56 per hour for 2020), or $12.84 per hour at the highest rate, for all hours worked when considering the base wage plus the service charge distribution. (SOF ¶ 33).

    3.    **Commissions, or Service Charges, Comprised More than Half of Plaintiffs' Compensation**

As a result of Defendant's collection and redistribution of the funds resulting from the mandatory service charge imposed by Defendant on every guest's bill, it is evident more than half of Plaintiffs' compensation for the representative period resulted from service charge commissions. *See* (SOF ¶¶ 32-33; Declaration of Daniel Tamir, Exh. 1 to SOC, at ¶ 29).

**V.    CONCLUSION**

The undisputed material facts establish that Plaintiffs received well in excess of the minimum wage for all hours worked and are considered employees exempt from overtime as a

matter of law. VMSB respectfully requests that this Court grant its Motion for Summary Judgment and dismiss Plaintiffs' Amended Complaint.

Dated: May 5, 2021

Respectfully submitted,

**BERGER SINGERMAN LLP**
Counsel for Defendants
350 East Las Olas Blvd. Suite 1000
Ft. Lauderdale, Florida 33301
Telephone: (954) 525-9900
Fax: (954) 523-2872

By: */s/ Andrew Zelmanowitz*
Andrew B. Zelmanowitz
Florida Bar No. 74202
Caitlin M. Trowbridge
Florida Bar No. 92113
Terron L. Clark
Florida Bar No. 104944
azelman@bergersingerman.com
ctrowbridge@bergersingerman.com
tclark@bergersingerman.com
DRT@bergersingerman.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served on this 5th day of May 2021, by electronic transmission through the Court's CM/ECF system upon all parties authorized to receive electronic notice in this case.

By: */s/ Andrew B. Zelmanowitz*
Andrew B. Zelmanowitz

**Service List**
Angeli Murthy, Esq.
amurthy@forthepeople.com
MORGAN & MORGAN, P.A.
8151 Peters Road, Suite 4000
Plantation, FL 33324
***Attorneys for Plaintiff***

13