**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 20-20857-Civ-WILLIAMS/TORRES

ISRAEL ROSELL and ROBERTO GONZALEZ
for themselves and on behalf of those similarly situated,

      Plaintiffs,

v.

VMSB, LLC d/b/a GIANNI'S and d/b/a
CASA CASUARINA, a Florida Limited
Liability Company,

      Defendant.

_____/

**REPORT AND RECOMMENDATION**
**ON PENDING MOTIONS FOR SUMMARY JUDGMENT**

This matter is before the Court on Israel Rosell's and Robert Gonzalez's (collectively, "Plaintiffs") and VMSB, LLC's ("Defendant") cross-motions for summary judgment. [D.E. 112, 114]. Each party filed their respective responses [D.E. 122, 124] and replies. [D.E. 130, 132]. Therefore, the motions are now ripe for disposition. After careful consideration of the motions, responses, replies, relevant authorities, and for the reasons discussed below, Plaintiffs' motion for summary judgment should be **DENIED** and Defendant's motion for summary judgment should be **GRANTED in part** and **DENIED in part**.[1]

---

[1]    On May 6, 2021, the Honorable Kathleen Williams referred the pending motions for summary judgment to the undersigned Magistrate Judge for disposition. [D.E. 115].

1

## I.  BACKGROUND

Plaintiffs are a group of current and former employees, seeking relief against Defendant for alleged violations of the minimum wage and overtime requirements provided under the Fair Labor Standards Act ("FLSA") and the Florida Minimum Wage Act ("FMWA").[2]  In 2015, Defendant assumed control over operations of an up-scale high-volume restaurant on Miami Beach and compensated staff members with a combination of an hourly wage and a shared automatic fee.

With the use of the automatic fee, Defendant billed guests a specific percentage[3] of the total sales price for food and beverage and included the cost on every check regardless of the size of the guest party or the amount of the bill. However, in some circumstances, Defendant removed the fee depending on customer satisfaction.  If, for example, a customer made an employee aware of a service complaint then management offered the guest a free drink or dessert, discounted an item from a bill, or removed the service charge entirely.  Neither servers nor bartenders had the authority to remove a service charge.  When employees presented a final check to customers, it included a separate line to include a discretionary tip.  If customers left a gratuity, the employee who serviced the guest was under no obligation to share it with colleagues.

---

[2]    Plaintiffs' complaint includes three counts with counts one and two seeking relief for violations of the minimum wage requirements under state and federal law, and count three for the recovery of overtime compensation.

[3]    The service charge at Defendant's restaurant was 20% from 2015 to August 4, 2017, and 22% thereafter.

Plaintiffs now seek summary judgment because, although Defendant compensated them with a direct wage of $5.65/hour, that amount falls below the minimum wage requirements under state and federal law.  Plaintiffs discount the automatic fee they received because that amount should be construed as a tip and not considered toward any of the employer's wage obligations.  Defendant disagrees because the record shows that Plaintiffs received a salary of approximately $12.98/hour when the direct wage is combined with the service charge – an amount well above any statutory requirements.  Defendant also claims that Plaintiffs' overtime claim fails because, as a retail or service establishment, an exemption applies to the number of hours worked.  Now that each party has filed their respective responses and replies, the cross-motions for summary judgment are now ripe for disposition.

## II.   APPLICABLE PRINCIPLES AND LAW

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).  On summary judgment, the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing

the motion.  *See Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 597 (1986) (quoting another source).

In opposing a motion for summary judgment, the nonmoving party may not rely solely on the pleadings, but must show by affidavits, depositions, answers to interrogatories, and admissions that specific facts exist demonstrating a genuine issue for trial.  *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).  The existence of a mere "scintilla" of evidence in support of the nonmovant's position is insufficient; there must be evidence on which the jury could reasonably find for the nonmovant.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  A court need not permit a case to go to a jury . . . when the inferences that are drawn from the evidence, or upon which the non-movant relies, are implausible.  *See Mize v. Jefferson City Bd. Of Educ.*, 93 F.3d 739, 743 (11th Cir. 1996) (citing *Matsushita*, 475 U.S. at 592-94).

At the summary judgment stage, the Court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Anderson*, 477 U.S. at 249.  In making this determination, the Court must decide which issues are material.  A material fact is one that might affect the outcome of the case.  *See id.* at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted.").  "Summary judgment will not lie if the dispute about a

material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

### III.   ANALYSIS

Both parties seek summary judgment on the question of whether Defendant violated the FLSA and the FMWA.  Plaintiff says that Defendant is liable under both statutes because it failed to adequately compensate employees on an hourly basis and for the time worked more than forty hours per week.  Plaintiffs also claim that Defendant seeks to avoid liability with the use of a service charge but that any reliance on this payment structure is meritless and cannot absolve Defendant of its requirements to comply with minimum wage and overtime laws.  Plaintiff construes Defendant's automatic fee as a tip and outside the regular rate of pay for an employee because (1) customers had the option to refuse payment based on service complaints, and (2) when Defendant filed its federal income taxes, it failed to include this fee as part of its gross receipts.  Because the evidence shows that Plaintiffs' compensation fell below statutory minimums and that employees worked overtime without just compensation, Plaintiffs ask that the Court enter partial summary judgment on liability as to all counts and limit trial to issues of willfulness and damages.

Defendant opposes Plaintiffs' motion in all respects because the relief requested is both factually and legally incorrect.  Defendant says that Plaintiffs' compensation exceeds all statutory requirements because, when the automatic fee

is added to the hourly wage, employees received at least $12.98/hour.[4]  Defendant also claims that Plaintiffs' overtime claim fails because the restaurant is a service establishment, the rate of pay is greater than one and one-half times the minimum hourly rate, and more than half of any employee's compensation is from commissions on goods or services.  Given this exemption, Defendant concludes that all of Plaintiffs' claims fail as a matter of law and that the Court should grant Defendant's motion for summary judgment.

**A.**   ***General Principles of the FLSA and the FMWA***

We begin with some basics about the FLSA and FMWA.  Congress enacted the FLSA to protect all covered workers from substandard wages and oppressive working hours.  *See Barrentine v. Arkansas-Best Freight Sys.*, 450 U.S. 728, 739 (1981); 29 U.S.C. § 202(a); *see also Pellon v. Bus. Representation Int'l, Inc.*, 528 F. Supp. 2d 1306, 1309 (S.D. Fla. 2007) ("One of the primary purposes of the FLSA is to protect employees from substandard wages," with the general requirement that employers compensate employees with a statutory minimum rate for work performed).  The law was designed to ensure that any employee covered under the law would receive "[a] fair day's pay for a fair day's work[.]"  *Barrenttine*, 450 U.S. at 739.  In other words, "[b]y establishing a floor for wages and a ceiling for hours worked without overtime compensation, lawmakers attempted 'to compensate those who labored in excess of the statutory maximum number of hours for the wear and tear of extra work and to spread employment through inducing employers to

---

[4]    Defendant states that it paid Plaintiffs Rosell and Gonzalez a wage ranging from $25/hour to more than $30/hour.

shorten hours because of the pressure of extra cost.'" *Allen v. Bd. of Pub. Educ. for Bibb Cty.*, 495 F.3d 1306, 1311 (11th Cir. 2007) (quoting *Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446, 460, (1948)).  To that end, "the statute requires payment of minimum wages and overtime pay, 29 U.S.C § 206, § 207, and gives employees deprived of these payments the right to receive them.  29 U.S.C § 216(b); *Maluvik v. Ameripark, LLC*, 694 F. App'x 705, 705 (11th Cir. 2017).; *see also Lyon v. Whisman*, 45 F.3d 758,764 (3rd Cir. 1995) ("The substantive sections of the FLSA, narrowly focusing on the minimum wage rates and maximum working hours, bear out its limited purpose.").

The FLSA obligations are simple for employees receiving a traditional hourly wage.  Employers meet their FLSA obligations, in these situations, with direct compensation paying more than the statutory minimum-wage and overtime requirements.  But, compliance with the FLSA is trickier in certain industries where other forms of compensation may be included.

Generally, the FLSA characterizes non-hourly compensation in three different categories that may be relevant to restaurant employees – tips, service charges, and commissions.  The classification of a restaurant employee's pay determines how, and to what extent, that compensation satisfies the FLSA's minimum-wage and overtime requirements.

Starting with a "tipped employee," the FLSA defines this term as "any employee engaged in an occupation in which he customarily and regularly receives

more than $30 a month in tips." 29 U.S.C. § 203(t).  The accompanying regulations further define "tips" as follows:

> A tip is a sum presented by a customer as a gift or gratuity in recognition of some service performed for him. It is to be distinguished from payment of a charge, if any, made for the service. Whether a tip is to be given, and its amount, are amounts determined *solely by the customer*, who has the right to determine who shall be the recipient of the gratuity.

29 C.F.R. § 531.52 (emphasis added).

In addition, that same regulation provides that tips can satisfy the FLSA's minimum-wage requirement by use of a tip credit in 29 U.S.C. § 203(m)(2)(A).  *Id.* The tip credit provision permits an employer to pay a tipped employees a reduced cash wage and "take a credit against the minimum wage by using an employees' [sic] tips as wages."  *Trejo v. Ryman Hosp. Properties, Inc.*, 795 F.3d 442, 447 (4th Cir. 2015) (internal quotation marks omitted).  Thus, for an employee making an amount below the federal minimum wage, the employer can utilize a tip credit to meet its obligations.  *See* 29 C.F.R. 531.59(a).  The same tip credit can be applied to an employer's overtime obligations.  *See* 29 C.F.R. § 531.60.  To illustrate how this operates in practice, an employee working overtime must be paid $10.88 per hour—one and one-half times the federal minimum wage of $7.25/hour.

Whether for regular or overtime wages, an employer must notify its employees in advance if it intends to rely on a tip credit provision to meet its FLSA obligations and must allow employees to retain "all tips received." 29 U.S.C. § 203(m)(2)(A).  In certain circumstances, employers are permitted to allow "the pooling of tips among employees who customarily and regularly receive tips."  *Id.*

8

Service charges, on the other hand, are not defined in the FLSA. But, the underlying regulations provide that "[a] compulsory charge for service, such as 15 percent of the amount of the bill, imposed on a customer by an employer's establishment, is not a tip[.]" 29 C.F.R. § 531.55(a). Instead, the amount qualifies as a service charge. *Id.* Service charges may also "be used in their entirety to satisfy the monetary requirements of the [FLSA]" if they "are distributed by the employer to its employees." *Id.* § 531.55(b). Hence, compensation that qualifies as a service charge can satisfy the FLSA minimum-wage and overtime obligations.

The third category of compensation is for commissions on goods or services:

> No employer shall be deemed to have violated [29 U.S.C. § 207(a)] by employing any employee of a retail or service establishment for a workweek in excess of the applicable workweek specified therein, if (1) the regular rate of pay of such employee is in excess of one and one-half times the minimum hourly rate applicable to him under [29 U.S.C. § 206], and (2) more than half his compensation for a representative period (not less than one month) represents commissions on goods or services. In determining the proportion of compensation representing commissions, all earnings resulting from the application of a bona fide commission rate shall be deemed commissions on goods or services without regard to whether the computed commissions exceed the draw or guarantee.

29 U.S.C. § 207(i). This is commonly referred to as the "7(i) exemption" and Congress enacted it "to relieve an employer from the obligation of paying overtime compensation to certain employees of a retail or service establishment paid wholly or in greater part on the basis of commissions." 29 C.F.R. § 779.414. If compensation qualifies as a commission under this provision, an employer is exempt from the FLSA's overtime requirements, but not its minimum-wage requirements.

Unfortunately, neither the FLSA nor its regulations define a "commission," but one regulation, 29 C.F.R. § 779.414, discusses the types of employees who receive a commission:

> These employees are generally employed in so-called "big ticket" departments and those establishments or parts of establishments where commission methods of payment traditionally have been used, typically those dealing in furniture, bedding and home furnishings, floor covering, draperies, major appliances, musical instruments, radios and television, men's clothing, women's ready to wear, shoes, corsets, home insulation, and various home custom orders.

*Id.* This is a non-exhaustive list, as "[t]here may be other segments in retailing where the proportionate amount of commission payments would be great enough for employees employed in such segments to come within the exemption." *Id.*

Under Florida state law, the FMWA incorporates many of the same requirements as provided under the FLSA, including the elements required to present a claim for the payment of minimum wages.[5] A plaintiff must establish, for instance, "that the plaintiff was employed by an employer covered by the FLSA during the time period involved; that the plaintiff was engaged in commerce or production of goods for commerce or employed by an enterprise engaged in commerce or in the production of goods for commerce; and that the employer failed

---

[5]     The Florida Constitution establishes a minimum wage and grants the state legislature the authority to establish all appropriate measures for implementation of the amendment.  *See* Fla. Const. art. X, § 24 ("Employers shall pay Employees Wages no less than the Minimum Wage for all hours worked in Florida . . . Persons aggrieved by a violation of this amendment may bring a civil action in a court of competent jurisdiction against an Employer or person violating this amendment."). Thus, pursuant to the state constitution, the Florida Legislature enacted the FMWA on December 12, 2005 to "provide measures appropriate for the implementation of § 24, Art. X of the State Constitution."  Fla. Stat. § 448.110(2).

10

to pay the plaintiff the minimum wage and overtime compensation required by law." *Kwasnik v. Charlee Fam. Care Servs. of Cent. Fla., Inc.*, 2009 WL 1607809, at *4 (M.D. Fla. June 9, 2009). The FMWA also has some notable differences when compared to the FLSA, yet those are inconsequential for the purposes of this case. *See, e.g.*, *Roman v. Hooters Spring Hill, Inc.*, 2016 WL 8997452, at *2 (M.D. Fla. July 8, 2016) ("The Florida legislature has incorporated sections of the FLSA into both the FMWA and the Florida Constitution, however, section 216 of the FLSA— the portion of the FLSA prescribing penalties and damages through which Plaintiff demands relief—is not one of those sections.") (citing Fla. Stat. § 448.110(3) (incorporating into the FMWA sections 213 and 214 of the FLSA)). Thus, with the benefit of a brief overview of each statute, we turn to the merits.

## B. *Whether the Automatic Fee was Mandatory*

The first step in classifying an automatic fee is to determine whether it is discretionary or mandatory. This is a significant question because, to avoid liability, an employer must satisfy its burden that it paid employees a minimum wage by "clear and affirmative evidence." *Klinedinst v. Swift Invs., Inc.*, 260 F.3d 1251, 1254 (11th Cir. 2001) (quoting *Birdwell v. City of Gadsden*, Ala., 970 F.2d 802, 805 (11th Cir. 1992)); *see also Dalley v. CG RYC, LLC*, 2018 WL 7629048, at *2 (S.D. Fla. Aug. 31, 2018) ("Whether a service charge constitutes a commission is a question of law.") (citing *Klinedinst*, 260 F.3d at 1254). The designation of a fee is thus critical for liability purposes because "[s]ervice charges that are distributed from employers to employees are counted against an employer's minimum wage

obligations under the FLSA, while tips are not[.]". *Labriola v. Clinton Ent. Mgmt., LLC*, 2017 WL 1150989, at *11 (N.D. Ill. Mar. 28, 2017) (citing 29 C.F.R. §§ 531.50, 531.55); *McFeeley v. Jackson St. Entm't, LLC*, 825 F.3d 235, 246 (4th Cir. 2016) (where service charges included in establishment's gross receipts and distributed by employer to employees, they may be counted "as an offset to an employer's minimum wage liability.")).

Hence, unlike tips, service charges are included in the regular rate of pay and may satisfy an employer's obligations under state and federal law.[6] *See Dean v. 1715 Northside Drive, Inc.*, 224 F. Supp. 3d 1302, 1324 (N.D. Ga. 2016) ("Under the FLSA, 'service charges'—but not 'tips'—may be used to satisfy an employer's monetary requirements under the FLSA.") (citing 29 C.F.R. § 531.55; *Henderson v. 1400 Northside Drive, Inc.*, 110 F. Supp. 3d 1318, 1322 (N.D. Ga. 2015)); *see also Pellon*, 528 F. Supp. 2d at 1316 ("Relying on 29 C.F.R. § 531.52 and § 531.55(a), the Department of Labor has proclaimed that even service charges in the form of imposed gratuity do not count as tips.") (citing U.S. Department of Labor, Wage and Hour Division Opinion Letter, 2005 WL 3308602 (September 2, 2005)).

---

[6]     FLSA cases often turn on whether a gratuity qualifies a tip or a service charge.  If a gratuity qualifies as a tip, the distribution provided to a plaintiff is not included in the regular rate of pay.  If, on the other hand, a gratuity constitutes a service charge, that amount is incorporated in the regular rate of pay with the potential for liability.  *See* 29 C.F.R. § 531.55 ("[C]ompulsory charge for service, such as 15 percent of the amount of the bill, imposed on a customer by an employer's establishment, is not a tip and, even if distributed by the employer to its employees, cannot be counted as a tip received in applying the provisions of sections 3(m)(2)(A) and 3(t).").

Defendant argues that Plaintiffs' compensation exceeds all statutory requirements because it provides a direct wage of $5.65/hour to all employees and compensates them with an additional service charge distribution. Defendant estimates that this total equates to approximately $12.98/hour and that customers lack the option of paying any amount directly to any specific recipient. Defendant also relies on the underlying record where it shows that an automatic fee was included on every bill[7] and subject to removal only in the instances where management compensated a guest for poor service:

> Q. The service charge, which may have been called 'gratuity', was that listed on the customer check that was generated from the system or the point of [sale] system that was provided to customers?
>
> A. Yes. The 22 percent was already included in the generation or when the ticket was generated. It was already included in the total and that's what was given to the client. The client – the customer rather, would take a look at that and that's what they would pay.

[D.E. 111-2 at 45:8-17 (deposition of named plaintiff Israel Rosell)]. Given these facts, Defendant concludes that the fee here should be considered a service charge and that, despite its removal on rare occasions, it should be incorporated into an employee's regular rate of pay.

The general rule in determining the characteristics of a fee depends on whether a customer has the discretion to pay. *See Lalic v. CG RYC, LLC*, 2018 WL 5098983, at *6 (S.D. Fla. Aug. 13, 2018), *Report and Recommendation*

---

[7]     There is no issue of fact between the parties that Defendant had a policy that added an automatic fee of 20-22% to customer bills for food and beverage transactions. [D.E. 113 at ¶ 7 ("Defendant had a stated policy pursuant to which it added a service charge of between 20-22% to its customers' bills for food and beverage transactions.")].

*adopted*, 2018 WL 5098883 (S.D. Fla. Aug. 29, 2018) ("Generally speaking a service charge is a 'tip' if the customer retains discretion over its payment, and is a 'commission' if the customer is required to pay it.").  If a customer retains discretion over a payment, a fee is often a tip.  *See Nascembeni v. Quayside Place Partners, LLP*, 2010 WL 2351467, at *2-3 (S.D. Fla. June 11, 2010) (finding that a service charge is "non-negotiable" and "customers [have] no discretion as to whether to pay the service charge or not.").  If, however, the fee is mandatory, courts deem it a service charge.  *See Soliman v. SOBE Miami, LLC*, 312 F. Supp. 3d 1344, 1350 (S.D. Fla. 2018) ("[A] service charge is a 'tip' if the customer retains discretion over its payment, and is a 'commission' if the customer is required to pay it.").

Defendant concedes that the removal of the automatic fee took place when customers made a service complaint.  [D.E. 122 at 4 ("While not authorized, there were very few occasions when the service charge was removed from a guest bill, all of which were for issues pertaining to service.")].  Defendant says, however, that only 0.19% of all orders in calendar year 2018 included a service charge removal and that an equally low percentage of .24% occurred in 2019.   Defendant claims that these removals are inconsequential because they occurred rarely and that this alone cannot convert a fee into a tip.

Defendant relies, for support, on two recent district court cases that considered the question presented.  The first is Judge Singhal's decision in *Compere v. Nusret Miami, LLC*, 2020 WL 4464627, at *3 (S.D. Fla. May 31, 2020).  There, the plaintiff sought relief under the FLSA because a restaurant failed to pay the

federal minimum wage and forced the front-of-house tipped employees to participate in a tip pool or tip-share with non-tipped employees.  Much like here, the restaurant included an automatic fee and the parties agreed that customers could not negotiate the added cost.

The parties disagreed, however, on whether the fee could be deemed mandatory or discretionary.  The plaintiff argued that, "because managers could, from time to time, decide not to charge the Service Charge to a particular table of patrons, the Service Charge is a 'tip'".  *Id.* at *3.  Yet, the district court rejected that argument because it contradicted the definition of a "tip" as defined in the FLSA's regulations:

> A tip is a sum presented by a customer as a gift or gratuity in recognition of some service performed for the customer.  It is to be distinguished from payment of a charge, if any, made for the service. Whether a tip is to be given, and its amount, are matters determined solely by the customer.  An employer that takes a tip credit against its minimum wage obligations is prohibited from using an employee's tips for any reason other than that which is statutorily permitted in section 3(m)(2)(A): As a credit against its minimum wage obligations to the employee, or in furtherance of a tip pool limited to employees who customarily and regularly receive tips.  Only tips actually received by an employee as money belonging to the employee may be counted in determining whether the person is a "tipped employee" within the meaning of the Act and in applying the provisions of section 3(m)(2)(A) which govern wage credits for tips.

29 C.F.R. § 531.52.

The district court also relied on the undisputed fact that the patrons of the restaurant did not pay the fees directly to employees nor did the customers have the right to dictate the recipient of the added cost.  *See Compere*, 2020 WL 4464627, at *3 ("[Plaintiffs argue that] because managers could, from time to time, decide not to

15

charge the Service Charge to a particular table of patrons, the Service Charge is a 'tip'. This is simply incorrect as a matter of law."). In looking for support, the court relied on a Ninth Circuit decision where the appellate court observed that an essential element of a tip is its voluntary nature and a patron's ability to direct it to a specific employee. *Compere*, 2020 WL 4464627, at *3 (citing *United States v. Conforte*, 624 F.2d 869, 874 (9th Cir. 1980)). Because the fee in *Compere* failed to resemble either characteristic or the FLSA's regulations, Judge Singhal granted the defendant's motion for summary judgment and held that "whether a manager at the Steakhouse may choose not to charge [the service cost] to a particular patron does not render it 'discretionary' for purposes of 29 C.F.R. § 531.32." *Id.*

Defendant's second case is Judge Scola's decision in *Nelson v. MLB Hotel Manager, LLC*, 2020 WL 7481410, at *4 (S.D. Fla. Dec. 18, 2020). The plaintiff there sought relief for alleged minimum wage and overtime violations under the FLSA, and the parties agreed that the restaurant imposed an automatic charge of 20% on every customer's bill. The plaintiff argued, like here, that the fee could not be included in an employee's regular rate of pay because "managers at the restaurant had discretion to take off the Service Charge and it was routinely [removed] in response to guest complaints." *Id.* (quotation marks and citation omitted).

The court found plaintiff's argument unpersuasive because, in relying on the holding in *Compere*, it saw no difference between a restaurant offering a customer a drink or dessert versus the waiver of a fee to resolve a customer complaint. In other

words, simply because a restaurant offered a drink or dessert did not mean that "customers had discretion over whether to pay for drinks or dessert," at the restaurant. *Id.* The court used the same logic when examining the waiver of a service charge because, even if a restaurant waived an automatic fee, that did not mean that "customers had discretion to pay," or that guests could determine the amount of the bill or to whom it would be paid. *Id.* Therefore, Judge Scola agreed that the waiver of a service charge to a particular patron could not render the added cost discretionary for purposes under 29 C.F.R. § 531.32 and, as a result, he granted the defendant's motion for summary judgment. *Id.* ("Just like occasionally 'buying [customers] a drink or des[s]ert to resolve their complaints does not mean that customers had discretion over whether to pay for drinks or dessert at La Sombra, occasionally waiving the service charge does not mean that it was a 'tip' that customers had discretion to pay, or the amount and to whom it would be paid. '[W]hether a manager at the [restaurant] may choose not to charge it to a particular patron does not render it 'discretionary' for purposes of 29 C.F.R. § 531.32.") (quoting *Compere*, 2020 WL 4464627 at *3).

Plaintiffs push back against both district court decisions because they are outlier cases and due to be reversed on appeal. Plaintiffs also say that this case is factually distinguishable and that neither *Compere* nor *Nelson* compel a different result. Plaintiffs claim, for example, that an important distinction with respect to this case is that Defendant removed or reduced service charges more than 550 times

during the relevant time period, and failed to properly report these service charges on federal income taxes.

Instead of relying on either *Compere* or *Nelson*, Plaintiffs ask that the Court consider Judge Lenard's decision in *Soliman*, 312 F. Supp. at 1350.  There, the court confronted the question of whether the removal or reduction of an automatic service charge could be deemed a tip or a commission.  Judge Lenard found the defendants' argument unpersuasive because the question of whether a fee qualifies as a commission is not whether a server is required to include it on a bill, but whether a customer is required to pay it:

> Defendants appear to argue that the service charge was "mandatory" because it was automatically included on every customers' bill.  This argument is a red herring—whether a service charge constitutes a "commission" does not depend on whether the server is required to include it on the customer's bill, but rather whether the customer is required to pay it.

*Id.* at 1351–52 (internal citations omitted).

The reason competing decisions[8] exist in our district is due to the differences in how courts interpret the meaning of whether a fee is discretionary or mandatory. Some courts find that absolute compliance is necessary for a fee to be mandatory whereas others find that, regardless of whether management waives the cost, the customer never has any discretion to refuse payment.  *See, e.g.*, *Alban v. 2K Clevelander LLC*, 2018 WL 4859068, at *5 (S.D. Fla. Aug. 28, 2018) ("Defendant has adduced evidence in support of its contention that the charge was mandatory;

---

[8]     The parties relied almost entirely on district court decisions and, for the most part, failed to reference any appellate authority that might have otherwise answered the question presented.

specifically, that the service charge was built in to each customer's check, and only a supervisor or manager could remove it.  In so admitting, defense counsel argued that something less than absolute application of the service charge still qualifies it as mandatory, not discretionary, an argument advanced without support in law or evidence that might establish how often the service charge was in fact waived.").

It is an undisputed fact here that Defendant's restaurant did not require, in all instances, the payment of a fee.  Plaintiff points out, for example, that there are more than 500 documented examples in Defendant's records where managers did not require customers to pay a fee during the relevant time period.  Defendant's rebuttal to that argument is that, when looking at that number from a percentage standpoint, it hovers around only .20% for all orders depending on the relevant calendar year.

The parties are, to some extent, missing the forest for the trees because the question is not simply what qualifies as "too little" or "too much" for a fee to be mandatory.  The question instead is two-fold – who determines the fee and the amount that should be provided.[9]  *See Shehata v. Sobe Miami, LLC*, 2018 WL 2995603, at *4 (S.D. Fla. June 14, 2018) ("[O]ther courts have indicated that whether the charge should be considered a commission or gratuity turns not on

---

[9]      The framing of this question is not something that the undersigned plucked out of thin air.  Rather, the requirements are explicitly in the FLSA's regulations where it provides that the characteristic of a tip is who determined whether it should be given and, if so, its corresponding amount.  *See* 29 C.F.R. § 531.52 ("Whether a tip is to be given, and its amount, are matters determined solely by the customer.").

whether the charge is automatically applied to every bill, but, *rather, on whether the customer ultimately has any discretion in paying the bill*.") (emphasis added) (citing *Nascembeni*, 2010 WL 2351467, at \*2 (where the court's analysis hinged on whether the service charge at issue "was non-negotiable, in other words, the . . . customers had no discretion as to whether to pay the service charge or not"); *Virgin v. Escalante-Black Diamond Golf Club, LLC*, 2014 WL 12591472, at \*1 (M.D. Fla. Aug. 4, 2014) (noting issues of fact with respect to whether a monthly membership fee and an 18% service charge applied to all food and drink bills were gratuities); *Cachola-Bonilla v. Wyndham El Conquistador Resort & Country Club*, 577 F. Supp. 2d 566, 573 (D.P.R. 2008) (finding an issue of fact where there was a question as to whether an assessed fee was "a compulsory service charge or whether it [wa]s indeed a 'disguised' tip")).  If the answer to neither is the customer, the fee is not a tip.

The Fourth Circuit recently articulated the same rule after examining the underlying regulation codified at 29 C.F.R. § 531.52.  For example, in *Wai Man Tom v. Hosp. Ventures LLC*, 980 F.3d 1027, 1038 (4th Cir. 2020), the Fourth Circuit looked at the text of the FLSA's regulations and found that "[a] sum of money 'presented by a customer as a gift or gratuity in recognition of some service performed' is only a tip when both the decision to pay the gratuity and the amount of the gratuity are 'determined solely by the customer.'"  *Wai Man Tom v. Hosp. Ventures LLC*, 980 F.3d 1027, 1037–38 (4th Cir. 2020) (quoting 29 C.F.R. § 531.52).  That is, "the material issue is not whether customers *always paid* a twenty-percent

automatic gratuity," but "*who* determined whether and how much to pay." *Id.* (emphasis in original).

Plaintiffs take issue with the way in which the Fourth Circuit framed the question because the decision is not binding and is otherwise inconsistent with prior district court decisions – namely the undersigned's Report and Recommendation that the Court adopted in *Lalic*. [D.E. 124 at 11-12, n.7 ("[T]he *Tom* court specifically applied an analytical framework at odds with that which this Court applied in *Lalic* based on applicable precedent – that the inquiry is whether or not the customer was required to pay the charge."). But, neither of those arguments are persuasive because, with respect to district court decisions, those cases are not law. Only appellate courts make law. So, even if district courts in our circuit rule one way, that does not necessarily mean that it should be given more consideration than an out of circuit appellate court opinion that opines on the same issue and to the extent it does not conflict with Eleventh Circuit precedent.

This, of course, presumes that a conflict exists in the first place. Plaintiffs suggest that *Wai Man Tom* conflicts with *Lalic* and decisions in this district because the latter observes that a fee is generally a tip if a customer retains discretion over its payment. Yet, that rule does not necessarily conflict with anything in *Wai Man Tom*. If anything, the Fourth Circuit sharpened the rule because it went one step further and clarified that the discretion needed for a fee to be considered a tip requires an analysis on who determines the gratuity and the amount – both of which are explicitly provided for in the FLSA's regulations. It is therefore unclear

how the Fourth Circuit's decision in *Wai Man Tom* is inconsistent with prior district court decisions.

Putting that aside, Plaintiffs say that *Wai Man Tom* compels the same result because of Defendant's concession that captains, who are non-managerial, could remove service charges. Plaintiffs also claim that they have evidence that customers could determine whether they would pay a service charge and that the [10]restaurant would remove the cost at their direction. Neither assertion is compelling. First, it is unclear how Defendant's admission helps answer either of the two questions presented above. It shows, if anything, that Defendant's employees – whether they are managerial or not – have the power to remove fees as opposed to customers. Plaintiffs' second argument is equally unavailing because the assertion that Plaintiffs could determine whether they paid a fee is overstated. While the record shows that customer complaints imposed great pressure on employees, the decision to remove a fee remained with the restaurant:

> At no time during my tenure at [the restaurant] did I remove a service charge from a bill in response to a complaint that the customer did not wish to pay the house, but instead only wanted to direct the payment to a particular server or bartender. In such a case, I would have explained to the customer that he or she may tip the server or bartender directly but the service charge remains.

[D.E. 121-8 (declaration of Gabriel Scocco)].

Nowhere in the record does Plaintiff point to any evidence showing that customers had the discretion to decline the payment of a service charge. Instead, a

---

[10]    Gabriel Scocco worked as a captain at Defendant's restaurant from 2015 through 2020.

removal required an employee of the restaurant to approve of a fee waiver regardless of whether, for all practical purposes, the pressure from customers became so great that it left Defendant between a rock and a hard place:

> Q.  How do you know that the service charge was removed if Mr. Scocco was the one who handed the bill back to the customer?
> A.  Because I was next to him watching him.  I remember the first time that it happened.  I asked him, is he going to remove the service charge from the bill, and we're not going to make anything on the service we provided that table.  His response was, what can I do?  They are complaining and I have to remove it.

[D.E. 123-7 at 53:19-54:2 (deposition of Roberto Gonzalez)].  This is where Plaintiffs' argument falls short because it equates the removal of the automatic fee due to customer pressure as rendering the fee discretionary.  But, while customers could pressure employees to remove the automatic fee, they lacked any discretion over the amount and whether to pay it unless the restaurant decided otherwise.

In turning back to the decision in *Wai Man Tom*, the Fourth Circuit found that the fee in that case failed to qualify as a tip because customers did not have the unfettered discretion to leave a required twenty-percent gratuity:

> As it is undisputed that the customers did not have unfettered discretion to leave (or not leave) the twenty-percent gratuity, the Employees have not raised a question of fact that would enable a reasonable jury to determine that the automatic gratuities were tips.  The decision to remove or modify the automatic gratuity—even construing the evidence in the light most favorable to the Employees— was Ăn's.  Consequently, even if the Employees could prove that Ăn would occasionally waive the automatic gratuities, that fact would not be material as it still would not enable a reasonable jury to find the twenty-percent automatic gratuity was a tip.

*Wai Man Tom*, 980 F.3d at 1038.

The same reasoning applies here because, despite Plaintiffs' assertions to the contrary, there is no evidence that customers controlled the decision to pay the service charge or the amount. In fact, Plaintiffs admit in their statement of material facts that "Defendant had a stated policy pursuant to which it added a service charge of between 20-22% to customers' bills for food and beverage transactions." [D.E. 113 at ¶ 7]. And Plaintiffs fail to provide any evidence that this policy was not uniformly applied. The only times in which Plaintiffs present disputed evidence on the fee is when an employee removed it due to customer complaints. But, given that the fee applied equally to all meals prior to a customer complaint and removal, there is no evidence that a customer had any discretion when the restaurant's employees held all the cards in determining whether a customer should pay and, if so, the amount that should be charged.

The outcome might be different if there was some evidence that the fee was merely suggested because that would raise a genuine issue of material fact on whether it was mandatory. *See, e.g.*, *Soliman*, 312 F. Supp. 3d at 1351 (finding a genuine issue of material fact because the record established that the service charge was "suggestive" and the menu reflected the same discretionary language). But, Plaintiffs point to nothing similar since the gratuity was automatically applied absent an employee's decision to waive it. *See Wai Man Tom*, 980 F.3d at 1038 ("[I]f a bill listed a twenty-percent charge for a party of six or more, but indicated the charge was 'suggested,' our decision might be different. But the record here is clear. The twenty-percent gratuity was automatically applied absent Ãn's decision to

waive it."); *see also Shehata*, 2018 WL 2995603, at *3 (finding a genuine issue of material fact when plaintiffs offered evidence that a twenty-percent gratuity was suggested rather than mandatory).  We therefore agree with the decisions in *Wai Man Tom*, *Nelson*, and *Compere* to conclude that the fee here was mandatory and that it meets the first characteristic of a service charge.

### C.   <u>Whether there is a Requirement to Include the Automatic Fee in Gross Receipts</u>

The next question is whether there is a requirement to include an automatic fee on an employer's gross receipts for it to be considered a service charge. Plaintiffs say yes because, even if Defendant pays state taxes, service charges *must* be included on gross receipts and federal income taxes for it to offset an employer's minimum wage liability.  Plaintiffs also suggest that it would be inconsistent to find otherwise because Defendant categorized the automatic fee as tips on employee paychecks and W-2s.  Thus, Plaintiffs reason that Defendant cannot have its cake and eat it too where the employer claims a credit on federal income taxes and, at the same time, seeks an offset against employee wages.

As support, Plaintiffs reference several cases where courts have found that, "[i]n order to count a service charge as an offset to an employer's minimum wage liability, the service charge must' have been included in the establishment's gross receipts' and 'distributed by the employer to its employees.'"  *Shaw v. Set Enterprises, Inc.*, 241 F. Supp. 3d 1318, 1329 (S.D. Fla. 2017) (quoting *McFeeley v. Jackson St. Ent., LLC*, 825 F.3d 235, 246 (4th Cir. 2016)); *Kellogg v. Fannie's Inc.*, 467 F. Supp. 3d 1296, 1315 (N.D. Ga. 2020) ("To be a service charge, the fee must be

(1) recorded in a company's gross receipts, and (2) distributed by the company to the employee.") (quoting *Hurst v. Youngelson*, 354 F. Supp. 3d 1362, 1383 (N.D. Ga. 2019)); 29 C.F.R. § 531.55(b) ("As stated above, service charges and other similar sums *which become part of the employer's gross receipts* are not tips for the purposes of the Act.") (emphasis added).

Defendant's response is that these cases are unpersuasive because the FLSA has no implementing regulations that include a record-keeping requirement. Instead, Defendant relies on Judge Scola' decision in *Nelson*, where the court declined to read into the underlying regulations a record-booking requirement in the absence of any binding authority. *See Nelson*, 2020 WL 7481410, at *5 ("The Plaintiff has presented no binding authority for reading into the implementing regulations an additional record-keeping obligation that does not exist on its face. The Court declines to broaden the scope of FLSA obligations in the absence of any binding authority to the contrary.").

Defendant also takes issue with Plaintiffs' argument that some district court cases, namely *Shaw*, compel a different result. Defendant acknowledges that *Shaw* requires a service charge to be included in an establishment's gross receipts for it count as an offset to an employer's minimum wage liability. But, Defendant says that *Shaw* is inapplicable, for the same reasons identified in *Nelson*, because the customers there paid their bill directly to an individual employee. Defendant says this is an important distinction since the customers here paid the service charge to the restaurant and the employer compensated employees with a distribution. *See*

*Nelson*, WL 7481410, at \*5 ("*Shaw* is distinguishable because in that case, unlike here, the fees were paid by the customers directly to the [employees], and the [employees] retained most of those fees.  The [employer] did not collect, record, and redistribute the fees to the [employees].") (citation and quotation marks omitted). So, given that the fee here is mandatory, that the restaurant collected it in the first instance, and that the restaurant distributed it to employees,[11] Defendant concludes that the fee here cannot qualify as a tip but must be a service charge.  *See* 29 C.F.R. § 531.55(a) ("[W]here negotiations between a hotel and a customer for banquet facilities include *amounts for distribution to employees* of the hotel, the amounts so distributed are not counted as tips received.") (emphasis added); *see also Nelson*, WL 7481410, at \*5 ("The core features of a service charge are that it be compulsory and distributed by the employer to the employees—as opposed to being collected by the employee in the first instance, then sent back to the employer for redistribution to the employees.").

Whether a fee must be recorded in a company's gross receipts to qualify as a service charge is a question that has divided district courts in both our circuit and elsewhere with each party referencing cases that support their respective positions. The reason for the split is due to the language in the FLSA's regulations, where it provides that "service charges and other similar sums which become part of the employer's gross receipts are not tips for the purposes of the Act."  29 C.F.R. §

---

[11]     From the service charge collection, the restaurant keeps 10% and distributes 90% to front of house employees including captains, servers, bartenders, back-servers, bussers, and hostesses.  [D.E. 111 at ¶ 18].

531.55(b).  Some courts – such as *Nelson* – view this language as speaking solely to an employer's gross receipts and tips.  But, other courts read the same language as excluding payments from gross receipts by *inferring* that, if gross receipts do not coincide with tips, they must go hand in hand with service charges:

> [T]he DOL's regulations implementing the FLSA, although not expressly keying service-charge treatment to inclusion in gross receipts, highlight that factor.  If inclusion of payments in gross receipts entitles an employer to treat those payments as service charges, it is reasonable to treat exclusion of payments from gross receipts as indicating that they are not service charges.

*Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901, 929 (S.D.N.Y. 2013).

Both interpretations have some merit, but Plaintiffs suggest that the best way to resolve the district court split is to look at an appellate court that has considered the question presented.[12]  That case is the Fourth Circuit's decision in *McFeeley v. Jackson St. Ent., LLC*, 825 F.3d 235, 246 (4th Cir. 2016).  There, the Fourth Circuit adopted a rule from a district court in New York and found that "[t]here are at least two prerequisites to counting 'service charges' as an offset to an employer's minimum wage liability."  *Id.*  The first is that a service charge "must have been included in the establishment's gross receipts," and the second is that it "must have been distributed by the employer to its employees, 29 C.F.R. § 531.55(b)."  *Id.* (citations and quotation marks omitted).

The Fourth Circuit explained that these requirements are necessary because it ensures that employees receive service charges they are due as part of their

---

[12]   An Eleventh Circuit decision would, of course, be the best way to resolve the current district court split.  But, neither party referenced an Eleventh Circuit decision and, based on our review, there does not appear to be any.

28

compensation and, while recordkeeping is a burden for small businesses in complying with the FLSA, the court determined that it was a necessary prerequisite in complying with the statute. *See id.* ("These requirements are necessary to ensure that employees actually received the service charges as part of their compensation as opposed to relying on the employer's assertion or say-so. We do not minimize the recordkeeping burdens of the FLSA, especially on small businesses, but some such obligations have been regarded as necessary to ensure compliance with the statute.") (internal citation omitted). Because the Fourth Circuit is the only appellate court that has weighed in on the requirements for a service charge to be used as an offset to an employer's minimum-wage obligations and that court has concluded that it must be included in an establishment's gross receipts, Plaintiffs ask that we apply the same rule here.

Assuming that Plaintiffs' proposed rule is correct, the parties disagree on whether Defendant included the fee in its gross receipts.[13] Plaintiffs say that Defendant failed to do so and that none of the fees are included on the restaurant's gross receipts for 2016-2019:

> Q. Okay. So, the gross receipts that he booked as income included the portion of the service charges that the company kept, but did not include the portion of the service charges that the company distributed, right?
> A. Correct
> . . .
> Q. Okay. But as you testified earlier, the gratuity amounts were reported as a deduction, not as part of the income, right?
> A. It was reported in the income line as a reduction of the income, yes.

---

[13]     Neither party disputes that Defendant distributed 90% of the automatic fee to employees.

Q. So, it was not reported as part of the gross receipts, right?
A. No, it was posted as part of the gross receipts.
Q. In your state documents, but not in the federal return, right?
A. Correct.

[D.E. 112-1 at 85:13-18; 133:3-14 (deposition of Defendant's corporate representative Daniel Tamir)]. Instead, Plaintiffs claim that Defendant reported the automatic fee as tips in violation of IRS regulations and that the restaurant did the same on employee paychecks and tax withholdings:

Q. Okay. Are you aware that the instructions form that the IRS puts out for this form says that the number that should be put in that box is tips that are received from customers for providing, delivering, or serving food or beverages?
A. I am aware of that now, but I didn't do this return, and I didn't know the law.
Q. Okay. So, do you think that that number is inaccurate?
A. That number was pulled from Paychecks.
Q. Okay. And so, the company did report that amount as tips. Are you saying that that amount should not have been reported as tips?
A. Yes.

*Id.* at 129:5-21.

Defendant takes issue with Plaintiffs' arguments because, for all the years in question, it collected the full amount of the automatic fee in its point-of-sale software.[14] Defendant says that the software separately categorizes food sales, beverage sales, automatic fees, and discretionary tips. Defendant also adds that managers use this information to input it into an excel spreadsheet to track discretionary tips including the distribution of an automatic fee. When the time comes to file federal income taxes, Defendant claims that it deducts the 90% in

---

[14]   Until May 2020, Defendant's point-of-sale system was known as Toast and had the ability to generate reports showing receipt information.

additional compensation "and correctly recognize[s] the net, taxable portion of the service charges as net business income and thus net taxable income[.]".  [D.E. 122 at 13]; [D.E. 121 at 21 ("Among other things, Defendant properly claimed and reported the service charges for Federal income tax purposes, including the net service charges (total service charges less deductible Additional Compensation) in its business income and income tax base.")].

Plaintiffs' reply is that there is irrefutable evidence that Defendant's tax records fail to accurately report the restaurant's gross receipts.  Plaintiffs say that the best way to dispel any lingering doubt – in addition to the deposition testimony referenced earlier – is to review Defendant's tax filings from 2016 to 2019.  There, Plaintiffs say that the documents "demonstrate irrefutably that Defendant reported millions of dollars less in 'gross receipts' than monies reported for state sales tax purposes, and that this difference is made up in the amounts for which it took a credit by reporting the amounts as tips." [D.E. 130 at 3].  Plaintiffs even prepared a chart summarizing the monthly and yearly sales tax filing numbers with a comparison to the gross receipts that Defendant reported each year, including the amounts reported on IRS form 8846.  Based on these documents and the relevant deposition testimony, Plaintiffs conclude that "any argument that Defendant reported the 'service charges' in its 'gross receipts,' is made from whole cloth."  *Id.*

To determine who has the better side of the argument, we return to the regulation in question:

§ 531.55 Examples of amounts not received as tips.

(a) A compulsory charge for service, such as 15 percent of the amount of the bill, imposed on a customer by an employer's establishment, is not a tip and, even if distributed by the employer to its employees, cannot be counted as a tip received in applying the provisions of sections 3(m)(2)(A) and 3(t). Similarly, where negotiations between a hotel and a customer for banquet facilities include amounts for distribution to employees of the hotel, the amounts so distributed are not counted as tips received.

(b) As stated above, service charges and other similar sums which become part of the employer's gross receipts are not tips for the purposes of the Act. Where such sums are distributed by the employer to its employees, however, they may be used in their entirety to satisfy the monetary requirements of the Act.

29 C.F.R. § 531.55. Although courts have disagreed on whether this regulation imposes a rigid set of requirements for a fee to qualify as a service charge, almost every case that we have reviewed – including the Fourth Circuit's decision in *McFeeley* – has omitted any consideration of the language in the regulation, namely that the title says that these are "*Examples* of amounts not received as tips." *Id.*

This is exactly what Judge Scola pointed out for what appears to be the first time in *Nelson* because, other than courts referencing other decisions and adopting the same rule without any analysis, the regulation never states that fees must meet both subsections to be considered a service charge. If it did, it would be inconsistent with the word "examples" in its plural form. The better way to read the regulation is that it presents two examples of a service charge with either being sufficient:

These two subsections are presented as two "examples," in the plural form. They are not presented as a multi-factor test that requires the Court to find that an "amount received" has each characteristic of the two examples spelled out in 29 C.F.R. § 531.55. As such, the Court

32

reasons that an amount received may be a service charge if it is covered by example (a), example (b), or both examples.

*Nelson*, 2020 WL 7481410, at *3. We are therefore unpersuaded with Plaintiffs' competing line of cases that require a fee to meet both subsections to qualify as a service charge because that interpretation directly contradicts the plain language of 29 C.F.R. § 531.55.

Plaintiffs may complain that the Court's recommendation fails to follow the only appellate court decision that has touched on this issue in an attempt to cast doubt that the undersigned's interpretation of 29 C.F.R. § 531.55 is correct. But, unlike the Fourth Circuit's decision in *Wai Man Tom,* which we relied upon earlier*, McFeeley* contains no analysis of the rule it adopts. It merely references a New York district court case and finds that two prerequisites exist for a service charge setoff because they "are necessary to ensure that employees actually receive[] the service charges as part of their compensation as opposed to relying on the employer's assertion or say-so." *McFeeley*, 825 F.3d at 246 (citing *Hart*, 967 F. Supp. 2d at 930). That is not compelling, however, because it fails to consider the regulatory text and instead adds language based on public policy reasons. While we would ordinarily consider an out of circuit appellate case to be persuasive authority like we did above, we cannot give *McFeeley* the same level of consideration if it omits any analysis and merely adopts a rule based on reasons that are outside the scope of the regulation.

We also decline to follow *McFeeley* because it contradicts the Eleventh Circuit's principles of statutory construction. "The first rule in statutory

construction is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute. If the statute's meaning is plain and unambiguous, there is no need for further inquiry." *United States v. Silva,* 443 F.3d 795, 797-98 (11th Cir. 2006) (internal quotations omitted). That applies here because, when reading the regulatory text, the title could not be clearer when it says that these are "[e]xamples of amounts not received as tips." 29 C.F.R. § 531.55. Nothing says that this is a two-part test and that a fee must meet both requirements. And "'[r]egulations, like statutes, are interpreted according to the [same] cannons of construction.'" *O'Shannessy v. Doll,* 566 F. Supp. 2d 486, 491 (E.D. Va. 2008) (quoting *Black & Decker Corp. v. Comm'r,* 986 F.2d 60, 65 (4th Cir. 1993)); *see also Chrysler Corp. v. Brown,* 441 U.S. 281, 295 (1979) ("It has been established in a variety of contexts that properly promulgated, substantive agency regulations have the "force and effect of law."). So, if the regulation is clear in what it requires, we must "assum[e] that the ordinary meaning" of the regulation's language expresses its purpose and enforce it "according to its terms." *Hardt v. Reliance Standard Life Ins. Co.,* 560 U.S. 242, 251 (2010) (internal quotation marks and citations omitted).

Plaintiffs ask instead that we inject the regulation with inferences, public policy reasons, and additional language to find a two-part test for a service charge setoff. Yet, we cannot do so when there is a presumption that administrative agencies – in this case the Department of Labor – "said what it meant and meant what it said." *Harry v. Marchant,* 291 F.3d 767, 770 (11th Cir. 2002); *see also Perez*

*v. Mortg. Bankers Ass'n*, 575 U.S. 92, 128–29 (2015) (Thomas, J., concurring) ("The proper question faced by courts in interpreting a regulation is *not what the best policy choice might be, but what the regulation means.*") (emphasis added).   The Eleventh Circuit has also cautioned courts to not "interpret a statute in a manner inconsistent with the plain language of the statute, unless doing so would lead to an absurd result.'" *United States v. Silva*, 443 F.3d 795, 798 (11th Cir. 2006) (quoting *United States v. Weaver,* 275 F.3d 1320, 1331 (11th Cir. 2001)).   Thus, given these well-defined principles, we cannot follow the Fourth Circuit's decision in *McFeeley* because to do so would require us to upend binding Eleventh Circuit authority that must inform our review of agency regulations.   *See, e.g.*, *Mejia v. Ocwen Loan Servicing, LLC*, 703 F. App'x 860, 864 (11th Cir. 2017) ("[T]he Court declines to read into the regulation a requirement that servicers must provide a phone number for the owner or assignee in order to satisfy the statutory requirements.   Indeed, under the plain meaning of 12 C.F.R. § 1024.36(d), the regulation does not contain a requirement with respect to providing a phone number for the owner or assignee of a loan.").

Having now clarified how the regulation operates, there is no requirement for an employer to include a service charge in its gross receipts if a fee meets the first example in the regulation.   This assumes, of course, that the second example requires a service charge to be part of an employer's gross receipts in the first place.   Like *Nelson*, we are hesitant to impose this as a requirement because the subsections of 29 C.F.R. § 531.55 are merely "examples" and, even putting that

aside, there is no explicit requirement that this applies to service charges. Courts have only developed that rule in a competing line of cases based on inferences and public policy reasons. But, that is not what the regulation requires nor have Plaintiffs explained how their interpretation is better based on the text presented other than referencing a string of cases without any analysis. The regulation only says that service charges and other sums are not tips if they are part of an employer's gross receipts. *See* 29 C.F.R. § 531.55 ("[S]ervice charges and other similar sums which become part of the employer's gross receipts are not tips for the purposes of the Act."). It never says, on the flip side, that a service charge *must* be included in an employer's gross receipts to retain this characteristic. Thus, like *Nelson*, we decline to add language to a regulation that presents "examples" of a service charge or to broaden it without any binding authority. *See Nelson*, 2020 WL 7481410, at *5 ("The Plaintiff has presented no binding authority for reading into the implementing regulations an additional record-keeping obligation that does not exist on its face. The Court declines to broaden the scope of FLSA obligations in the absence of any binding authority to the contrary.").

In returning to the two examples listed in 29 C.F.R. § 531.55, there is no need to consider whether Defendant included the automatic fee on its gross receipts because the restaurant collected and distributed the amounts in question to employees. And that is an undisputed fact. [D.E. 123 at ¶18]. So, when we combine the analysis above in finding that the fee is mandatory with the undisputed fact that Defendant distributed 90% of the proceeds to employees, the

fee has all the characteristics of a service charge – not a tip.  *See* 29 C.F.R. § 531.55 ("[W]here negotiations between a hotel and a customer for banquet facilities include *amounts for distribution to employees* of the hotel, the amounts so distributed are not counted as tips received.") (emphasis added).

Furthermore, even if the undersigned's interpretation of 29 C.F.R. § 531.55 is incorrect and the Court adopted the rule in the competing line of cases, it is still unclear why Defendant fails to meet the second example of the regulation when the point-of-sale system here recorded the gross receipts of the automatic fee.  Plaintiffs' argument is instead directed at the *filing of gross receipts* for federal income tax purposes.  Yet, that takes the rule one step further than the plain language of the regulation where it only requires that "service charges . . . become part of the employer's gross receipts[.]".  29 C.F.R. § 531.55.  It says nothing about a requirement to take those gross receipts and report them for federal tax purposes. [15]

If Defendant collected the fee proceeds in the point-of-sale system, it is unclear why that is insufficient with the rule Plaintiffs demand.  Judge Scola alluded to this in *Nelson* because based "on a plain text reading of the regulations, it appears that by collecting the service charge proceeds, those proceeds do in fact become a part of the employer's gross receipts until such time as they are

---

[15]    The Fourth Circuit's decision in *McFeeley* supports the same view because, while it articulated the rule in the competing line of cases, the court never required an employer to report gross receipts for tax purposes for the service charge offset to apply.  Instead, the court stated that the service charge offset was not met because the employer "*never recorded* or included as part of the dance clubs' gross receipts any payments that patrons paid directly to dancers."  *McFeeley*, 825 F.3d at 246 (emphasis added).  Hence, without any mention of a requirement to report gross receipts for tax purposes, *McFeeley* does not support Plaintiffs' position.

distributed back to employees." *Nelson*, 2020 WL 7481410, at *5.  Whether an employer then fails to adequately report those gross receipts for federal or state tax purposes is an entirely separate matter.  We therefore conclude that the automatic fee meets all the qualifications of a service charge.

### D.   *Whether the Service Charge and Hourly Wage Satisfies the Minimum Wage Requirements under the FLSA and FMWA*

The resulting question is whether the direct wage of $5.65/hour, when combined with the service charge distribution, satisfies all state and federal minimum wage requirements.  The Florida minimum wage required employers to provide a minimum hourly rate for the following years: $8.05/hour for 2015-16, $8.10/hour for 2017, $8.46/hour for 2018-19, and $8.56/hour for 2020.  The federal minimum wage, on the other hand, has remained at $7.25/hour during the same time.  *See* 29 U.S.C. § 206(a)(1)(C).

When the direct wage is added to the service charge distribution, the parties agree that the total exceeds the statutory minimum wage.  That is, if the automatic fee qualifies as a service charge and that total is added to the wage of $5.65/hour, Plaintiffs agree that the minimum wage claim cannot stand.   [D.E. 113 at 27 ("Defendant's policy is and has been to retain approximately 10% of the total 'service charges' collected for itself.")]; [D.E. 123 at 33 ("To the extent Defendant's point is that, mathematically, adding together Plaintiffs' monies received from the tip pool [i.e. the service charge] and Plaintiffs' hourly wages equaled more than 1.5 times the minimum wage, Plaintiffs admit that this is true.")].   Accordingly,

Defendant's motion for summary judgment should be **GRANTED** as to counts one and two.[16]

### E.  *Whether Defendant Failed to Pay Overtime Compensation*

The final question is whether Defendant failed to pay overtime compensation. The FLSA requires an employer to pay its employees not less than one-and-one-half times the rate of their regular pay for any hours exceeding forty in a workweek.  *See* 29 U.S.C. § 207(a)(1).   However, Congress provided several statutory exemptions for employers, which the Supreme Court has instructed courts to give "a fair (rather than a 'narrow') interpretation."  *Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1142 (2018).  The exemption in § 207(i) provides as follows:

> No employer shall be deemed to have violated [29 U.S.C. § 207(a)] by employing any employee of a retail or service establishment for a workweek in excess of the applicable workweek specified therein, if (1) the regular rate of pay of such employee is in excess of one and one-half times the minimum hourly rate applicable to him under [29 U.S.C. § 206], and (2) more than half his compensation for a representative period (not less than one month) represents commissions on goods or services.  In determining the proportion of compensation representing commissions, all earnings resulting from the application of a bona fide commission rate shall be deemed commissions on goods or services without regard to whether the computed commissions exceed the draw or guarantee.

29 U.S.C. § 207(i).

The Eleventh Circuit reads this exemption as favorable to employees because Congress's intent is "to ensure that workers who are paid on a commission basis are

---

[16]   We omit any discussion of whether Defendant meets the requirements to claim a tip credit or a valid tip pool because, for the reasons already stated, the automatic fee is a service charge.

guaranteed to receive at least the legislated minimum wage without requiring them to work overtime for it." *Klinedinst*, 260 F.3d at 1256.  Thus, to prevail on summary judgment, it requires an employer show (1) that the restaurant is a retail or service establishment, (2) that Plaintiffs' "*regular rate of pay*" exceeds 1.5 times the applicable minimum wage, and (3) that more than half of Plaintiffs' compensation for the applicable representative period consists of commissions on goods or services. *See* 29 U.S.C. § 207(i) (emphasis added); *see also Buttita v. DIRECTV LLC*, 2017 WL 10456972, at *32 (N.D. Fla. Sept. 28, 2017) (same).

The first requirement is not at issue because Plaintiffs concede that Defendant's restaurant is a retail or service establishment.[17]   [D.E. 112 at 17 ("Plaintiffs do not dispute that they were employed in a retail or service establishment as defined by the law.").   The second requirement also does not appear to be at issue because, while Plaintiffs repeat that the service charge was neither mandatory nor reported on the restaurant's gross receipts for federal tax purposes, the Court has already disposed of these arguments for the reasons already stated.  And Plaintiffs fail to explain how their regular rate of pay does not exceed 1.5 times the applicable minimum wage.  Plaintiffs instead jump to the third requirement without giving much attention to the second.  Thus, Plaintiffs have, for the most part, abandoned their opposition to the second requirement.  *See, e.g.*,

---

[17]    Although not at issue, the FLSA's regulations define a retail or service establishment where 75 percent of its "annual dollar volume of sales of goods or services (or of both) is not for resale and is recognized as retail sales or services in the particular industry.  *See* 29 C.F.R. § 779.411; *see also Diggs v. Ovation Credit Servs., Inc.*, 449 F. Supp. 3d 1280, 1288 (M.D. Fla. 2020) (recognizing restaurants as a service establishment within the meaning of the FLSA).

*Resolution Trust Corp. v. Dunmar Corp.,* 43 F.3d 587, 599 (11th Cir.1995) ("There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment. Rather, the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned.").

However, for the sake of completeness and to ensure that we reach the right result, the second requirement mandates that an employee's regular rate of pay exceed 1.5 times the federal minimum wage of $7.25/hour. The "regular rate of pay" is defined as the "hourly rate actually paid [to] the employee for the normal, nonovertime workweek for which he is employed" and "must reflect all payments which the parties had agreed shall be received regularly during the workweek, exclusive of overtime payments." 29 C.F.R. § 779.419(b) (quoting *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419 (1945)). Thus, the regular rate of pay is calculated by dividing the employer's total weekly compensation by the number of hours worked during a single workweek. *See Klinedinst*, 260 F.3d at 1256; *see also* 29 U.S.C. § 207(e) (stating that the regular rate includes "all remuneration for employment paid to, or on behalf of, the employee").

Defendant says that it meets this requirement because of point-of-sale reports and other monthly submissions that show, on a biweekly payroll, the compensation amounts provided to Plaintiffs. However, there is a noticeable problem with Defendant's argument. Defendant claims, in its reply, that its routine business practices only track monthly expenses and revenues and it supports that

assertion with a snapshot of several payrolls to show that the restaurant adequately compensated Plaintiffs. But, a regular rate is determined by dividing an employer's total compensation *during the workweek* by the number of hours worked. *See* 29 C.F.R. § 779.419(b). The number of hours in a workweek is therefore critical because a defendant "is required to maintain records of all hours worked by its employees in each workday and the total hours worked in each workweek." *Lugo v. Hulett Env't Servs., Inc.*, 2011 WL 13298502, at *7 (M.D. Fla. June 17, 2011) (citing 29 C.F.R. § 516.16; 29 C.F.R. § 516.2(a)(7)).

Yet, according to Defendant's own assertions, it did not comply with this requirement because the system it uses to monitor revenues, expenses, and hours failed to track these items from week to week. [D.E. 132 at 8-9 ("Defendant, as part of its routine business practice, tracks monthly expenses, revenues, in connection with its submission of sales tax payments on a monthly basis (including the monthly TOAST POS reports previously generated and produced as Exhibit H . . . and the monthly sales tax submissions . . . and the fact that Defendant is on a biweekly payroll")]. It is therefore impossible for the Court to determine Plaintiffs' regular rate of pay or the number of hours worked each week because of Defendant's failure to maintain adequate time records.[18]

---

[18] After the Court granted the parties' motion seeking leave to file certain items under seal, Defendant attached several spreadsheets in support of its motion for summary judgment. But, based on the undersigned's review, none of them provide the number of hours worked each week for employees. And if the information is buried somewhere in these filings, Defendant failed to articulate how the Court could calculate the regular rate of pay.

This does not translate, however, to an automatic victory for Plaintiffs because – before any analysis can be made as to whether the exemption applies – the fact finder must determine the number of hours worked per week and the regular rate of pay. *See Klinedinst*, 260 F.3d at 1256-1257. ("The number of hours worked per week is a genuine issue of material fact for the factfinder"). The only determination that can be made for now is that that Defendant has failed to provide adequate accounting records, rendering the applicability of the exemption not ripe for disposition.[19] *See* 29 C.F.R. § 779.419 ("The employee's 'regular rate' of pay must be computed, in accordance with the principles discussed above, on the basis of his hours of work in that particular workweek and the employee's compensation attributable to such hours."); *see also Selz v. Investools, Inc.*, 2011 WL 285801, at *9 (D. Utah Jan. 27, 2011) (stating that, when the number of hours worked is unclear, summary judgment should be denied because "[t]he regulations clearly state that the minimum wage requirement is to be calculated on a weekly basis, and if not satisfied, then the employer loses the exemption for that week."); *Owopetu v. Nationwide CATV Auditing Serv.*, 2011 WL 883703 * 10 (D. Vt. March 11, 2011) (noting in an exemption case that "[t]he regular rate of pay must be calculated weekly because, absent an exemption, the FLSA requires employers to pay overtime compensation to employees who work more than forty hours in any given week.").

---

[19]     Defendant bears the burden of proof on its 29 USC § 207(i) affirmative defense.  That means Defendant – not Plaintiffs – will be required to establish the regular rate of pay.  Plaintiffs will, of course, have the opportunity to bring forward whatever evidence they have with respect to the number of hours worked because the jury cannot make a final determination until there is a factual finding as to the number of hours worked and the regular rate of pay.

Defendant's fallback argument is that "[t]here is no dispute that Plaintiffs and Opt-In Plaintiffs were compensated well in excess of one and one-half times the minimum wage, where more than 50% of total pay was derived from the redistributed service charges[.]". [D.E. 132 at 9].  But, Defendant is engaging in a slight of hand that is easy to miss.  Plaintiffs admit in their response to Defendant's undisputed facts that "[t]o the extent Defendant's point is that, mathematically, adding together Plaintiffs' monies received from the tip pool [i.e. the service charge] and Plaintiffs' hourly wages equaled more than 1.5 times the minimum wage, Plaintiffs admit that this is true."  [D.E. 123 at ¶ 33].

Plaintiffs dispute, however, that they received a rate equal to 1.5 times the minimum wage for *all hours worked*.[20]  *Id.* ("However, even if Defendant could claim a tip credit, it *would only be enough to raise the rate earned to basic minimum*

---

[20]   This is consistent with the regulatory scheme, as noted in 29 C.F.R. § 778.104:

Each workweek stands alone.

The Act takes a single workweek as its standard and does not permit averaging of hours over 2 or more weeks.  Thus, if an employee works 30 hours one week and 50 hours the next, he must receive overtime compensation for the overtime hours worked beyond the applicable maximum in the second week, even though the average number of hours worked in the 2 weeks is 40.  This is true regardless of whether the employee works on a standard or swing-shift schedule and regardless of whether he is paid on a daily, weekly, biweekly, monthly or other basis.  The rule is also applicable to pieceworkers and employees paid on a commission basis. It is therefore necessary to determine the hours worked and the compensation earned by pieceworkers and commission employees on a weekly basis.

29 CFR § 778.104.

*wage*, and could not cause Plaintiffs' wages to equal 1.5 times the minimum for each hour worked.") (emphasis added).  This is where Defendant's problem comes to light because Plaintiffs only admit that the service charge and the direct wage are enough to meet basic minimum wage requirements, and therefore the undersigned recommended granting the motion for summary judgment as to counts one and two.  Plaintiffs do not agree, on the other hand, that the same applies to all hours worked and the calculation of overtime compensation.  And without any weekly time records to substantiate Defendant's position, it is impossible for the Court to determine if Plaintiffs' disagreement has any merit.  *See* 29 C.F.R. § 779.419(a) (recognizing that if the regular rate of pay is not more than one and one-half times the minimum wage for a given workweek, there is no overtime pay exemption for the employee in that particular workweek).

Defendant may complain that Plaintiffs' dispute is immaterial because the latter fails to reference anything in the record to sustain their position.  Yet, that argument is unavailing because the burden is on the employer – not the employee – to show that the 7(i) exemption applies.  *See Lugo*, 2011 WL 13298502, at *3 ("It is Defendant's burden to prove each element of the 7(i) exemption[.]") (citing *Birdwell v. City of Gadsden, Ala.*, 970 F.2d 802, 805 (11th Cir. 1992) ("The burden is on the employer to prove he has adopted a 7(k) workweek exemption."); *Klinedinst v. Swift Investments, Inc.*, 260 F.3d 1251, 1255 (11th Cir. 2001) ("The employer bears the burden of proving the applicability of an FLSA exemption by clear and affirmative evidence.")).  Thus, "[a]bsent credible undisputed evidence of the appropriate weekly

calculations taking into account all hours worked and all compensation relating to that week, summary judgment for either side is not warranted," as to count three for the recovery of overtime compensation. *Lugo*, 2011 WL 13298502, at \*7. Both motions for summary judgment as to count three should therefore be **DENIED**.[21]

## IV.  CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that:

A.    Plaintiffs' motion for summary judgment [D.E. 112] be **DENIED**.

B.    Defendant's motion for summary judgment [D.E. 114] be **GRANTED** as to counts one and two**,** and **DENIED** as to count three.

Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the parties have fourteen (14) days from service of this Report and Recommendation within which to file written objections, if any, with the District Judge.  Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report.  28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g., Patton v. Rowell,* 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Commissioner of Social Security,* 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

---

[21]    Plaintiffs presented additional arguments to defeat the 7(i) exemption with respect to the third requirement.  But, there is no need to consider those arguments given that an issue of fact already exists as to the second requirement.

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 22nd day of

June, 2021.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge