# EXHIBIT "A"

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is made in settlement of the claims asserted in the case *Rosell, et al. v. VMSB LLC*, Case No. 20-CV-20857-WILLIAMS/TORRES (the "Action"), pending in the United States District Court for the Southern District of Florida (the "Court"). The Agreement is made by and between the Parties: Named Plaintiffs in the afore-identified action ("Named Plaintiffs") and the individuals who chose to join the case as party plaintiffs listed in Exhibit A to this Agreement ("Opt-In Plaintiffs") on the one hand (collectively, "Plaintiffs") and, on the other hand, Defendant VMSB LLC ("Casa Casuarina" or "Defendant"), and any of its direct and indirect parents, owners, members, managers, franchisors, partners, subsidiaries, affiliates, predecessors, agents, directors, managers, employees, successors, heirs, spouses, administrators, executors, assigns, representatives, or other persons or entities acting on their behalf (the "Released Parties"). Plaintiffs and Defendant may be referred to herein individually as a "Party" or collectively as the "Parties."

This Agreement is made by and through counsel for Plaintiffs and Defendant, and is made as a compromise between them for the complete and final settlement of Count III of the Amended Complaint Plaintiffs filed in the Action – specifically, Plaintiffs' claim for overtime compensation under the Fair Labor Standards Act ("FLSA").

### RECITALS

A. On February 26, 2020, the Named Plaintiffs' filed the Action, and filed an Amended Complaint on October 5, 2020.

B. In both complaints in the Action, the Named Plaintiffs alleged that Defendant violated the Fair Labor Standards Act ("FLSA") by failing to pay them and other workers proper

1

overtime compensation. The Named Plaintiffs sought damages, penalties, attorneys' fees, and costs, on their own behalf and on behalf of similarly situated individuals.

   C.  The Named Plaintiffs in the Amended Complaint also alleged that Defendant failed to pay proper minimum wage compensation and operated an unlawful tip pool. The Parties acknowledge and agree that this Agreement is not intended to and does not resolve those claims, or any other claims beyond those for overtime compensation specifically released herein.

   D.  On July 7, 2020, the Court granted Plaintiff's Motion for conditional certification of this action as a collective action, permitting notice to be issued. Notice of the lawsuit was sent to the putative collective class on or about August 7, 2020. In total, 24 Plaintiffs[1] (in addition to the Named Plaintiffs) filed consents to join the Action, which consents state:

> By my signature below, I hereby authorize the filing and prosecution of the above-styled Fair Labor Standards Act action in my name and on my behalf by the above-representative Plaintiff and designate the class representatives as my agents to make decisions on my behalf concerning the litigation, the method and manner of conducting the litigation, the entering of an agreement with Plaintiff's counsel concerning Plaintiff's attorney fees and costs, and all other matters pertaining to this lawsuit.

   E.  On October 19, 2020, the Parties engaged in a full day of mediation, in Miami, Florida, with Neil Flaxman, Esq., acting as the mediator. Mr. Flaxman is experienced in employment litigation, and has mediated several wage and hour collective actions. The Parties were not able to reach a resolution of this matter at mediation.

   F.  Over the next several months, the Parties participated in extensive fact investigations; conducted extensive depositions and other discovery; briefed cross-motions for summary judgment; and prepared for trial.

---

[1]  One individual erroneously included in the class list opted in to the action. However, his consent was withdrawn because he was not a server or bartender for Defendant.

G. On June 22, 2021, a Report and Recommendation was entered in the Action, recommending *inter alia* that Count III proceed to trial, and that judgment be entered for Defendant on Counts I and II. Plaintiffs filed objections to the Report and Recommendation as to Counts I and II, and the issue is fully briefed and remains pending as of the date the Parties reached an agreement in principle.

H. At this stage, the Parties have agreed that regardless of the outcome as to Counts I and II, it would be in all Parties' interests to resolve Count III prior to trial.

I. Defendant denies the allegations in the Lawsuit that in engaged in any wrongdoing or violation of law. Defendant is entering into this Agreement because it will eliminate the burden, risk and expense of trial. Except for purposes of this settlement, neither this Agreement nor any document referred to herein, nor any action taken to carry out this Agreement, may be used in any way as an admission, concession, or indication by or against Defendant of any fault, wrongdoing, or liability whatsoever.

**NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED** among the Parties, by and through their respective attorneys of record, and subject to the approval of the Court, that in consideration of the foregoing and of the promises and mutual covenants contained herein, and other good and valuable consideration, Count III of the Action shall be settled, released, and dismissed with prejudice, upon and subject to the following terms and conditions:

1. **DEFINITIONS**

For purposes of this Agreement, the following definitions shall apply, in addition to the definitions set forth in other sections of this Agreement:

A. "Defendant's Counsel" shall mean the law firm of Berger Singerman, LLC.

B. "FLSA" the federal Fair Labor Standards Act, 29 U.S.C. §206, *et seq.*

C. "Plaintiffs' Counsel" shall mean the law firm of Morgan & Morgan, P.A.

D. "Named Plaintiffs" shall mean Israel Rosell and Roberto Gonzalez.

E. "Released Claims" has the meaning set forth in Section 3, *infra*.

F. "Settlement Effective Date" shall mean the date upon which the Court enters an Order granting approval of the confidential settlement.

G. "Settlement Class Member" shall mean any Named Plaintiff or Opt-In in the Action who deposits or cashes a settlement check.

## 2. SETTLEMENT AMOUNT

In consideration for the actions, promises and mutual covenants and releases described herein, Defendant shall pay the total gross sum of One hundred and ninety-five thousand and No/100 cents ($195,000.00) (the "Settlement Amount") in settlement of the Released Claims as described in Section 3 *infra*. The Settlement Amount includes all amounts to be paid by Defendant for payments to the twenty-five Plaintiffs, and all attorneys' fees, litigation costs, and expenses of Plaintiffs' Counsel to date as set forth herein, including costs incurred in administering this settlement. The Settlement Amount is the maximum amount that Defendant is obligated to pay under this Agreement. In no event shall Defendant be required to pay more than the Settlement Amount in complete satisfaction of all its obligations under this Agreement.

## 3. RELEASED CLAIMS

Release and Waiver: Each Settlement Class Member agrees to release and waive claims for overtime compensation under the Fair Labor Standards Act ("FLSA") against Defendant, and any of its direct and indirect parents, owners, franchisors, partners, subsidiaries, affiliates, predecessors, agents, directors, managers, employees, successors, heirs, spouses, administrators, executors, assigns, representatives, or other persons or entities acting on their behalf (the

"Released Parties"). This release explicitly excludes any claims not expressly released, and explicitly excludes all claims raised under Counts I and II of the Amended Complaint.

**4.     COURT APPROVAL**

A.     This Agreement is conditioned upon the Court's approving the settlement terms set forth herein. The Parties agree to submit to the Court a Joint Motion to Approve Settlement, seeking an Order from the Court, *inter alia*: (1) approving the terms of the Parties' settlement as reflected in this Agreement; (2) providing for application of the Release set forth in Paragraph 3 of this Agreement to apply to all Plaintiffs who cash or deposit their settlement checks (as explained below); and (3) dismissing Plaintiffs' claims under Count III with prejudice.

B.     If the Court denies the Joint Motion to Approve Settlement, then this Agreement shall be deemed null and void, of no force and effect, inadmissible as evidence, and of no probative value, and the Parties hereto represent, warrant, and covenant that neither the Agreement nor any discussions, conversations, or negotiations leading to execution of the Agreement, will be used or referred to for any purpose whatsoever.

**5.     NO ADMISSION OF LIABILITY; INADMISSIBILITY OF THIS AGREEMENT; PARTIES' AUTHORITY**

A.     Nothing contained in this Agreement shall be construed as or deemed an admission of liability, damages, culpability, negligence, wrongdoing, or other unlawful behavior on the part of Defendant. Defendant denies any liability or wrongdoing of any kind associated with the claims alleged and the allegations contained in the Complaint.

B.     This Agreement is a compromise of disputed claims and shall not be construed as an admission of liability at any time or for any purpose, under any circumstances, by the Parties, the Released Parties, or by any third-party. The Parties further acknowledge and agree that neither this Agreement nor the settlement shall be used to suggest an admission of liability in any

5

dispute the Parties or any third-parties may have now or in the future with respect to any person or entity, including Defendant and/or the Released Parties. Neither this Agreement nor anything in it, nor any part of the negotiations that occurred in connection with the creation of this Agreement, shall constitute evidence with respect to any issue or dispute in any lawsuit, legal proceeding, or administrative proceeding, and shall be inadmissible in evidence in any proceeding, except an action or proceeding to approve, interpret, or enforce its terms.

6. **ALLOCATION OF SETTLEMENT AMOUNT**

A. Subject to Court approval, the Settlement Amount shall be payable as follows: (1) $129,224.60 will be allocated to payments to be made to Plaintiffs in the amounts set forth in the spreadsheet attached hereto as Exhibit A ("Settlement Payments"); and (2) $65,775.40 shall be payable to Plaintiffs' counsel for fees and costs related to Count III. Defendant will not oppose Plaintiffs' Counsel's application to the Court for approval of attorneys' fees and litigation costs in the amounts set forth in this section, and agrees for purposes of resolution and approval only, not to oppose Plaintiffs' representations that the amount sought in fees and costs is reasonable.

Defendant expressly is aware that Plaintiffs claim additional amounts in attorneys' fees in the Action related to Counts I and II of the Amended Complaint, and, if Plaintiffs prevail in those claims, will seek additional attorneys' fees related to those claims. Defendant agrees that nothing in this Agreement precludes Plaintiffs from seeking additional fees, to the extent actual fees exceed $65,775.40, should Plaintiffs prevail upon Counts I or II, and/or if the Parties subsequently resolve Counts I or II through settlement. Defendant further agrees that if Plaintiffs prevail on Counts I or II of the Amended Complaint, Defendant will not oppose Plaintiffs' petition for attorneys' fees related to same on the grounds that Plaintiffs resolved and released such claims for fees in this Agreement. Plaintiffs agree that fees and costs paid in connection

with this Agreement shall operate as an offset to any fees and costs that may be claimed as to Counts I and II, and that Plaintiffs shall not be entitled to a double recovery of those fees and costs. Plaintiffs further agree that the payment of costs in this Agreement resolves all claims for costs (but not fees) in the Action.

      B.    Individual Settlement payments will be calculated according to a formula that guarantees that each Opt-In will receive an amount equal to **the greater** of the following:

      (a)    75% of the amount they would have been owed in overtime wages if they had succeeded in proving liability under Count III, and an equal amount as liquidated damages on that amount; or

      (b)    $400.00.

### 7. SETTLEMENT PAYMENTS AND DISTRIBUTION OF CHECKS

      A.    Within fourteen (14) days of the Court's approval of the settlement as fair and reasonable, Defendant shall provide to Plaintiffs' Counsel checks made payable to each Named Plaintiff and Opt-In Plaintiff in the amounts set forth in Exhibit A to this Agreement. Each payment will be reported for tax purposes according to the designations set forth in Exhibit A.

      B.    The Settlement Payments will be paid to Plaintiffs as follows: Each Plaintiff shall receive two checks. Once check will be for the gross amount set forth in Exhibit A as alleged unpaid wages, and will be subject to applicable lawful withholdings. This payment will be reported on an IRS Form W-2. The remaining payment to each Plaintiff shall be in the amount listed in Exhibit A as payment for alleged liquidated damages, without withholdings and will be reported on an IRS Form 1099 as "other income."

C.   If any check is returned as undeliverable, Plaintiffs' Counsel will undertake to find a better address and will re-send the check.

D.   Each Plaintiff shall be obligated to obtain his or her own independent tax advice concerning the proper income reporting and tax obligations regarding any and all payments and/or other remuneration he or she receives or obtains pursuant to this Agreement.  Nothing in this Agreement shall be construed as Defendant' or Plaintiffs' Counsel providing any advice regarding the reporting or payment of taxes or the consequences of a Plaintiff's participation in any portion of this Agreement.

E.   Plaintiffs' counsel will send a Notice to Plaintiffs in the form attached hereto as Exhibit B, explaining the settlement and the claims released upon acceptance of the settlement check through cashing or depositing same.

F.   In satisfaction of payments for attorneys' fees and costs under this Agreement, Defendant shall deliver a check in the amount of $65,775.40 payable to Morgan & Morgan, P.A., within 21 days of the date this Agreement is approved by the Court. Defendant will issue an IRS Form 1099 to Morgan & Morgan, P.A. for this amount.

G.   Except as otherwise provided herein, the Parties shall bear their own costs incurred in the prosecution, defense, or settlement of the Action.

**8.   REASONABLE COMPROMISE OF BONA FIDE DISPUTE**

The Parties agree that the terms of this Agreement represent a reasonable compromise of disputed issues in Count III, arising from a bona fide dispute over the merits of Plaintiffs' claims and alleged damages and agree to represent the same to the Court.  The Parties further agree that the settlement is a fair, reasonable, and adequate resolution of Plaintiffs' claims in Count III and is in the best interests of the Plaintiffs.

9. **AUTHORITY TO BIND**

The Named Plaintiffs warrant and represent that they are the duly authorized representatives of all Plaintiffs and are authorized to make decisions on behalf of all Plaintiffs, including in connection with the settlement of Plaintiffs' claims in the Action. The Named Plaintiffs also warrant and represent that they are expressly authorized to take all appropriate action required or permitted to be taken under this Agreement to effectuate its terms. The individual executing this Agreement on behalf of Defendant likewise authorizes that he/she is duly authorized to bind Defendant and to enter into this Agreement.

10. **MUTUAL FULL COOPERATION**

Counsel for the Parties agree to and shall use their best efforts to fully cooperate with each other in good faith and to take all actions reasonably necessary to implement the terms of this Agreement.

11. **CONSTRUCTION**

The Parties agree that the terms and conditions of this Agreement are the result of lengthy and intensive arm's-length negotiations between the Parties, with Plaintiffs represented by Plaintiffs' Counsel, and that this Agreement shall not be construed in favor of or against any party by reason of the extent to which any party or his, her, or its counsel participated in the drafting of this Agreement. The Parties request that before declaring any provision of this Agreement invalid, the Court shall first attempt to construe all provisions valid to the fullest extent possible consistent with applicable precedents and the intent expressed in this Agreement.

12. **MEDIATION OF DISPUTES**

Any dispute that may arise under this Agreement, including any dispute with respect to administration of the settlement benefits to Plaintiffs, shall first be submitted by mutual

agreement of the Parties to Neil Flaxman, Esq., for mediation in Miami, Florida, or to another mediator as may be agreed to by the parties before the dispute is submitted to the Court.

13. **CAPTIONS AND INTERPRETATIONS**

Section titles or captions contained in this Agreement are inserted as a matter of convenience and for reference, and in no way define, limit, extend, or describe the scope of this Agreement or any of its provisions.

14. **INTEGRATION CLAUSE**

This Agreement and the attached Exhibits A–B, which are incorporated fully herein, contain the entire agreement between the Parties relating to the settlement of Count III of the Action, and all prior or contemporaneous agreements, understandings, representations, and statements, relating to the matters addressed herein, whether oral or written and whether by a Party or such Party's legal counsel, are merged in this Agreement.  No rights under this Agreement may be waived except in a writing signed by the counsel for the Parties.  This Agreement, including the attached Exhibits A–B, may not be changed, altered, or modified, except in a writing signed by the Parties and approved by the Court.

15. **BINDING ON ASSIGNS**

This Agreement shall be binding upon and inure to the benefit of the Parties and their respective heirs, trustees, executors, administrators, successors and assigns.

16. **COUNTERPARTS & SIGNATURES**

This Agreement may be executed in counterparts, which, when taken together with other signed counterparts, shall constitute one Agreement.  This Agreement may be executed by original signature or DocuSign.  Copies transmitted by facsimile, PDF, or email, shall be deemed to be originals.

17. **APPLICABLE LAW**

This Agreement shall be governed by and construed in accordance with federal law and the law of the State of Florida, to the extent federal law does not apply.

18. **RETENTION OF JURISDICTION**

The Parties intend to request that the Court retain jurisdiction with respect to the implementation and enforcement of the terms of the Agreement, and all Parties submit to the jurisdiction of the Court for purposes of implementing and enforcing the terms of this Agreement.

19. **ELECTRONIC COPIES**

Plaintiffs and Defendant intend to allow for the electronic imaging and storage of this Agreement and the admissibility into evidence of such an image in lieu of the original paper version of this Agreement. Plaintiffs and Defendant stipulate that any computer printout of any such image of this Agreement shall be considered to be an "original" under the applicable court or arbitral rules of evidence when maintained in the normal course of business and shall be admissible as between the parties to the same extent and under the same conditions as other business records maintained in paper or hard copy form. The Parties agree not to contest, in any proceeding involving the parties in any judicial or other forum, the admissibility, validity, or enforceability of any image of this Agreement because of the fact that such image was stored or handled in electronic form.

**IT IS SO STIPULATED.**

Dated: 9/9/2021 | 12:06 AM PDT          **NAMED PLAINTIFFS**

                                         By: _____

11

                          Plaintiff Israel Rosell, Individually and as Collective Representative

By: _____

Plaintiff Roberto Gonzalez, Individually and as Collective Representative

**VMSB, LLC d/b/a CASA CASUARINA**

Dated:_____  By: _____

Name:_____
Title:_____

12

Plaintiff Israel Rosell, Individually and as Collective Representative

By:

_____
Plaintiff Roberto Gonzalez, Individually and as Collective Representative


**VMSB, LLC d/b/a CASA CASUARINA**

Dated: 09/17/2021     By: _____

Name: Salem Mounayyer
Title: Manager

12

| EXHIBIT A - CHART OF PAYMENTS TO COLLECTIVE MEMBERS | | | | |
|---|---|---|---|---|
| Full Name | OT hours | Total W-2 Payment For Alleged Back Wages Owed | Total 1099 "Other Income" Payment for Alleged Liquidated Damages Owed | Total Settlement Payment |
| **Gonzalez, Roberto** | 965.87 | $ 11,438.24 | $ 11,438.24 | $ 22,876.48 |
| **Rosell Israel** | 433.73 | $ 4,639.95 | $ 4,639.95 | $ 9,279.90 |
| Alcivar, Jose | 0 | $ 200.00 | $ 200.00 | $ 400.00 |
| Ayala, Valentina Julianna (3/18/20- 6/22/2020) Covid | 465.38 | $ 5,176.10 | $ 5,176.10 | $ 10,352.20 |
| Bekkali, Younes | 8.82 | $ 200.00 | $ 200.00 | $ 400.00 |
| Chow, Allan | 551.94 | $ 6,277.96 | $ 6,277.96 | $ 12,555.92 |
| Del Moral Garcia Murino, Rocio | 22.83 | $ 200.00 | $ 200.00 | $ 400.00 |
| Fafard, Andre | 38.12 | $ 354.26 | $ 354.26 | $ 708.52 |
| Faria, Daniel | 47.32 | $ 428.87 | $ 428.87 | $ 857.74 |
| Fernandez, Roberto | 1010.94 | $ 10,622.12 | $ 10,622.12 | $ 21,244.24 |
| Gonzales, Renzo | 57.35 | $ 392.70 | $ 392.70 | $ 785.40 |
| Gonzalez, Richard | 83.02 | $ 810.97 | $ 810.97 | $ 1,621.94 |
| Kaiser, Tracey | 0 | $ 200.00 | $ 200.00 | $ 400.00 |
| Labrada Guzman, Ernesto | 396.39 | $ 4,673.80 | $ 4,673.80 | $ 9,347.60 |
| Lopez, Milka | 78.12 | $ 619.40 | $ 619.40 | $ 1,238.80 |
| Lyles, Sabrina Pauline | 5.65 | $ 200.00 | $ 200.00 | $ 400.00 |
| Mamani, Felicia | 0 | $ 200.00 | $ 200.00 | $ 400.00 |
| Pallais, Lorie | 8.53 | $ 200.00 | $ 200.00 | $ 400.00 |
| Ramirez Casas, Jhorvid Alexander | 0 | $ 200.00 | $ 200.00 | $ 400.00 |
| Richter, Nestor Octavio | 261.56 | $ 2,646.67 | $ 2,646.67 | $ 5,293.34 |
| Rincon-Duarte, Juan L | 670.74 | $ 6,941.11 | $ 6,941.11 | $ 13,882.22 |
| Sanchez, Eduardo M | 147.44 | $ 1,573.21 | $ 1,573.21 | $ 3,146.42 |
| Stojanoska, Nikolina | 198.17 | $ 2,139.29 | $ 2,139.29 | $ 4,278.58 |
| Stojanovski, Ljupcho | 265.68 | $ 2,614.45 | $ 2,614.45 | $ 5,228.90 |
| Turnbaugh, Katelyn Rose | 124.58 | $ 1,248.22 | $ 1,248.22 | $ 2,496.44 |
| Vdavenka, Piotr Alyaksandravic | 75.98 | $ 415.01 | $ 415.01 | $ 830.02 |
| | 5918.16 | | | $ 129,224.60 |